ROSE, WARDEN v. LUNDY

No. 80–846.   Argued October 14, 1981—Decided March 3, 1982

O'CONNOR, J., announced the Court's judgment and delivered an opinion of the Court with respect to Parts I, II, III–A, III–B, and IV, in which BURGER, C. J., and BRENNAN, MARSHALL, POWELL, and REHNQUIST, JJ., joined, and an opinion with respect to Part III–C, in which BURGER, C. J., and POWELL and REHNQUIST, JJ., joined.   BLACKMUN, J., filed an opinion concurring in the judgment, *post*, p. 522.   BRENNAN, J., filed an opinion concurring in part and dissenting in part, in which MARSHALL, J.,

joined, *post*, p. 532. WHITE, J., filed an opinion concurring in part and dissenting in part, *post*, p. 538. STEVENS, J., filed a dissenting opinion, *post*, p. 538.

*John C. Zimmermann*, Assistant Attorney General of Tennessee argued the cause *pro hac vice* for petitioner. With him on the briefs was *William M. Leech, Jr.*, Attorney General.

*D. Shannon Smith*, by appointment of the Court, 451 U. S. 904, argued the cause and filed a brief for respondent.*

JUSTICE O'CONNOR delivered the opinion of the Court, except as to Part III–C.

In this case we consider whether the exhaustion rule in 28 U. S. C. §§ 2254 (b), (c) requires a federal district court to dismiss a petition for a writ of habeas corpus containing any claims that have not been exhausted in the state courts. Because a rule requiring exhaustion of all claims furthers the purposes underlying the habeas statute, we hold that a district court must dismiss such "mixed petitions," leaving the prisoner with the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims to the district court.

I

Following a jury trial, respondent Noah Lundy was convicted on charges of rape and crime against nature, and sentenced to the Tennessee State Penitentiary.[1] After the Tennessee Court of Criminal Appeals affirmed the convictions and the Tennessee Supreme Court denied review, the respondent filed an unsuccessful petition for postconviction relief in the Knox County Criminal Court.

---

*Solicitor General McCree, Assistant Attorney General Jensen, Deputy Solicitor General Frey*, and *George W. Jones* filed a brief for the United States as *amicus curiae* urging reversal.

[1] The court sentenced the respondent to consecutive terms of 120 years on the rape charge and from 5 to 15 years on the crime against nature charge.

The respondent subsequently filed a petition in Federal District Court for a writ of habeas corpus under 28 U. S. C. § 2254, alleging four grounds for relief: (1) that he had been denied the right to confrontation because the trial court limited the defense counsel's questioning of the victim; (2) that he had been denied the right to a fair trial because the prosecuting attorney stated that the respondent had a violent character; (3) that he had been denied the right to a fair trial because the prosecutor improperly remarked in his closing argument that the State's evidence was uncontradicted; and (4) that the trial judge improperly instructed the jury that every witness is presumed to swear the truth. After reviewing the state-court records, however, the District Court concluded that it could not consider claims three and four "in the constitutional framework" because the respondent had not exhausted his state remedies for those grounds. The court nevertheless stated that "in assessing the atmosphere of the cause taken as a whole these items may be referred to collaterally."[2]

Apparently in an effort to assess the "atmosphere" of the trial, the District Court reviewed the state trial transcript and identified 10 instances of prosecutorial misconduct, only 5 of which the respondent had raised before the state courts.[3]

---

[2] The Tennessee Criminal Court of Appeals had ruled specifically on grounds one and two, holding that although the trial court erred in restricting cross-examination of the victim and the prosecuting attorney improperly alluded to the respondent's violent nature, the respondent was not prejudiced by these errors. *Lundy* v. *State*, 521 S. W. 2d 591, 595–596 (1974).

[3] In particular, the District Court found that the prosecutor improperly:

(1) misrepresented that the defense attorney was guilty of illegal and unethical misconduct in interviewing the victim before trial;

(2) "testified" that the victim was telling the truth on the stand;

(3) stated his view of the proper method for the defense attorney to interview the victim;

(4) misrepresented the law regarding interviewing government witnesses;

In addition, although purportedly not ruling on the respondent's fourth ground for relief—that the state trial judge improperly charged that "every witness is presumed to swear the truth"—the court nonetheless held that the jury instruction, coupled with both the restriction of counsel's cross-examination of the victim and the prosecutor's "personal testimony" on the weight of the State's evidence, see n. 3, *supra,* violated the respondent's right to a fair trial. In conclusion, the District Court stated:

> "Also, subject to the question of exhaustion of state remedies, where there is added to the trial atmosphere the comment of the Attorney General that the only story presented to the jury was by the state's witnesses there is such mixture of violations that one cannot be separated from and considered independently of the others.
>
> ·    ·    ·    ·    ·
>
> ". . . Under the charge as given, the limitation of cross examination of the victim, and the flagrant prosecutorial misconduct this court is compelled to find that petitioner did not receive a fair trial, his Sixth Amendment rights

---

(5) misrepresented that the victim had a right for both private counsel and the prosecutor to be present when interviewed by the defense counsel;

(6) represented that because an attorney was not present, the defense counsel's conduct was inexcusable;

(7) represented that he could validly file a grievance with the Bar Association on the basis of the defense counsel's conduct;

(8) objected to defense counsel's cross-examination of the victim;

(9) commented that the defendant had a violent nature;

(10) gave his personal evaluation of the State's proof.

The petitioner concedes that the state appellate court considered instances 1, 3, 4, 5, and 9, but states without contradiction that the respondent did not object to the prosecutor's statement that the victim was telling the truth (#2) or to any of the several instances where the prosecutor, in summation, gave his opinion on the weight of the evidence (#10). The petitioner also notes that the conduct identified in #6 and #7 did not occur in front of the jury, and that the conduct in #8, which was only an objection to cross-examination, can hardly be labeled as misconduct.

were violated and the jury poisoned by the prosecutorial misconduct."[4]

In short, the District Court considered several instances of prosecutorial misconduct never challenged in the state trial or appellate courts, or even raised in the respondent's habeas petition.

The Sixth Circuit affirmed the judgment of the District Court, 624 F. 2d 1100 (1980), concluding in an unreported order that the court properly found that the respondent's constitutional rights had been "seriously impaired by the improper limitation of his counsel's cross-examination of the prosecutrix and by the prosecutorial misconduct." The court specifically rejected the State's argument that the District Court should have dismissed the petition because it included both exhausted and unexhausted claims.

## II

The petitioner urges this Court to apply a "total exhaustion" rule requiring district courts to dismiss every habeas corpus petition that contains both exhausted and unexhausted claims.[5] The petitioner argues at length that such a

---

[4] The court granted the writ and ordered the respondent discharged from custody unless within 90 days the State initiated steps to bring about a new trial.

[5] The Fifth and Ninth Circuits have adopted a "total exhaustion" rule. See *Galtieri* v. *Wainwright*, 582 F. 2d 348, 355–360 (CA5 1978) (en banc), and *Gonzales* v. *Stone*, 546 F. 2d 807, 808–810 (CA9 1976). A majority of the Courts of Appeals, however, have permitted the District Courts to review the exhausted claims in a mixed petition containing both exhausted and unexhausted claims. See, *e. g.*, *Katz* v. *King*, 627 F. 2d 568, 574 (CA1 1980); *Cameron* v. *Fastoff*, 543 F. 2d 971, 976 (CA2 1976); *United States ex rel. Trantino* v. *Hatrack*, 563 F. 2d 86, 91–95 (CA3 1977), cert. denied, 435 U. S. 928 (1978); *Hewett* v. *North Carolina*, 415 F. 2d 1316, 1320 (CA4 1969); *Meeks* v. *Jago*, 548 F. 2d 134, 137 (CA6 1976), cert. denied, 434 U. S. 844 (1977); *Brown* v. *Wisconsin State Dept. of Public Welfare*, 457 F. 2d 257, 259 (CA7), cert. denied, 409 U. S. 862 (1972); *Tyler* v. *Swenson*,

rule furthers the policy of comity underlying the exhaustion doctrine because it gives the state courts the first opportunity to correct federal constitutional errors and minimizes federal interference and disruption of state judicial proceedings. The petitioner also believes that uniform adherence to a total exhaustion rule reduces the amount of piecemeal habeas litigation.

Under the petitioner's approach, a district court would dismiss a petition containing both exhausted and unexhausted claims, giving the prisoner the choice of returning to state court to litigate his unexhausted claims, or of proceeding with only his exhausted claims in federal court. The petitioner believes that a prisoner would be reluctant to choose the latter route since a district court could, in appropriate circumstances under Habeas Corpus Rule 9(b), dismiss subsequent federal habeas petitions as an abuse of the writ.[6] In other words, if the prisoner amended the petition to delete the unexhausted claims or immediately refiled in federal court a petition alleging only his exhausted claims, he could lose the opportunity to litigate his presently unexhausted claims in federal court. This argument is addressed in Part III-C of this opinion.

---

483 F. 2d 611, 614 (CA8 1973); *Whiteley* v. *Meacham*, 416 F. 2d 36, 39 (CA10 1969), rev'd on other grounds, 401 U. S. 560 (1971).

In *Gooding* v. *Wilson*, 405 U. S. 518 (1972), this Court reviewed the merits of an exhausted claim after expressly acknowledging that the prisoner had not exhausted his state remedies for all of the claims presented in his habeas petition. *Gooding* does not control the present case, however, since the question of total exhaustion was not before the Court. Two years later, in *Francisco* v. *Gathright*, 419 U. S. 59, 63–64 (1974) *(per curiam)*, the Court expressly reserved the question of whether § 2254 requires total exhaustion of claims.

[6] Rule 9(b) provides that

"[a] second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ."

In order to evaluate the merits of the petitioner's arguments, we turn to the habeas statute, its legislative history, and the policies underlying the exhaustion doctrine.

### III

### A

The exhaustion doctrine existed long before its codification by Congress in 1948. In *Ex parte Royall*, 117 U. S. 241, 251 (1886), this Court wrote that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act:

> "The injunction to hear the case summarily, and thereupon 'to dispose of the party as law and justice require' does not deprive the court of discretion as to the time and mode in which it will exert the powers conferred upon it. That discretion should be exercised in the light of the relations existing, under our system of government, between the judicial tribunals of the Union and of the States, and in recognition of the fact that the public good requires that those relations be not disturbed by unnecessary conflict between courts equally bound to guard and protect rights secured by the Constitution."

Subsequent cases refined the principle that state remedies must be exhausted except in unusual circumstances. See, *e. g.*, *United States ex rel. Kennedy* v. *Tyler*, 269 U. S. 13, 17–19 (1925) (holding that the lower court should have dismissed the petition because none of the questions had been raised in the state courts. "In the regular and ordinary course of procedure, the power of the highest state court in respect of such questions should first be exhausted"). In *Ex parte Hawk*, 321 U. S. 114, 117 (1944), this Court reiterated that comity was the basis for the exhaustion doctrine: "it is a principle controlling all habeas corpus petitions to the federal courts, that those courts will interfere with the administration of justice in the state courts only 'in rare cases where exceptional circumstances of peculiar urgency are shown to

exist.'"[7]   None of these cases, however, specifically applied the exhaustion doctrine to habeas petitions containing both exhausted and unexhausted claims.

In 1948, Congress codified the exhaustion doctrine in 28 U. S. C. §2254, citing *Ex parte Hawk* as correctly stating the principle of exhaustion.[8]   Section 2254,[9] however, does not directly address the problem of mixed petitions.   To be sure, the provision states that a remedy is not exhausted if there exists a state procedure to raise "the question presented," but we believe this phrase to be too ambiguous to sustain the conclusion that Congress intended to either permit or prohibit review of mixed petitions.   Because the legislative history of §2254, as well as the pre-1948 cases, contains

---

[7] The Court also made clear, however, that the exhaustion doctrine does not bar relief where the state remedies are inadequate or fail to "afford a full and fair adjudication of the federal contentions raised."   321 U. S., at 118.

[8] The Reviser's Notes in the appendix of the House Report state: "This new section [§2254] is declaratory of existing law as affirmed by the Supreme Court.   (See *Ex parte Hawk*, 1944, . . . 321 U. S. 114 . . .)." H. R. Rep. No. 308, 80th Cong., 1st Sess., A180 (1947); Historical and Revision Notes following 28 U. S. C. §2254.   See also *Darr* v. *Burford*, 339 U. S. 200, 210 (1950) ("In §2254 of the 1948 recodification of the Judicial Code, Congress gave legislative recognition to the *Hawk* rule for the exhaustion of remedies in the state courts and this Court"); *Brown* v. *Allen*, 344 U. S. 443, 447–450 (1953); *Fay* v. *Noia*, 372 U. S. 391, 434 (1963).

[9] Section 2254 in part provides:

"(b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

"(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."

no reference to the problem of mixed petitions,[10] in all likelihood Congress never thought of the problem.[11] Consequently, we must analyze the policies underlying the statutory provision to determine its proper scope. *Philbrook* v. *Glodgett*, 421 U. S. 707, 713 (1975) ("'In expounding a statute, we must . . . look to the provisions of the whole law, and to its object and policy'" (citations omitted)); *United States* v. *Bacto-Unidisk*, 394 U. S. 784, 799 (1969) ("where the statute's language seem[s] insufficiently precise, the 'natural way' to draw the line 'is in light of the statutory purpose'" (citation omitted)); *United States* v. *Sisson*, 399 U. S. 267, 297–298 (1970) ("The axiom that courts should endeavor to give statutory language that meaning that nurtures the poli-

---

[10] Section 2254 was one small part of a comprehensive revision of the Judicial Code. The original version of § 2254, as passed by the House, provided that

"[a]n application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court or authority of a State officer shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is no adequate remedy available in such courts or that such courts have denied him a fair adjudication of the legality of his detention under the Constitution and laws of the United States." H. R. 3214, 80th Cong., 1st Sess. (1947).

The Senate amended the House bill, changing the House version of § 2254 to its present form. The Senate Report accompanying the bill states that one purpose of the amendment was "to substitute detailed and specific language for the phrase 'no adequate remedy available.' That phrase is not sufficiently specific and precise, and its meaning should, therefore, be spelled out in more detail in the section as is done by the amendment." S. Rep. No. 1559, 80th Cong., 2d Sess., 10 (1948). The House accepted the Senate version of the Judicial Code without further amendment.

In 1966, Congress amended § 2254 to add subsection (a) and redesignate the existing paragraphs as subsections (b) and (c). See Pub. L. 89–711, § 2 (c), 80 Stat. 1105.

[11] See Note, Habeas Petitions with Exhausted and Unexhausted Claims: Speedy Release, Comity and Judicial Efficiency, 57 B. U. L. Rev. 864, 867, n. 30 (1977) (suggesting that before 1948 habeas petitions did not contain multiple claims).

cies underlying legislation is one that guides us when circumstances not plainly covered by the terms of a statute are subsumed by the underlying policies to which Congress was committed"); *Unexcelled Chemical Corp.* v. *United States*, 345 U. S. 59, 64 (1953) ("Arguments of policy are relevant when for example a statute has an hiatus that must be filled or there are ambiguities in the legislative language that must be resolved").

### B

The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. See *Braden* v. *30th Judicial Circuit Court of Kentucky*, 410 U. S. 484, 490–491 (1973).[12] Under our federal system, the federal and state "courts [are] equally bound to guard and protect rights secured by the Constitution." *Ex parte Royall*, 117 U. S., at 251. Because "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal courts apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter." *Darr* v. *Burford*, 339 U. S. 200, 204 (1950). See *Duckworth* v. *Serrano*, 454 U. S. 1, 2 (1981) *(per curiam)* (noting that the exhaustion requirement "serves to minimize friction between our federal and state systems of justice by allowing the State an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights").

A rigorously enforced total exhaustion rule will encourage state prisoners to seek full relief first from the state courts, thus giving those courts the first opportunity to review all

---

[12] See also Developments, Federal Habeas Corpus, 83 Harv. L. Rev. 1038, 1094 (1970) (cited favorably in *Braden*).

claims of constitutional error. As the number of prisoners who exhaust all of their federal claims increases, state courts may become increasingly familiar with and hospitable toward federal constitutional issues. See *Braden* v. *30th Judicial Circuit Court of Kentucky, supra,* at 490. Equally as important, federal claims that have been fully exhausted in state courts will more often be accompanied by a complete factual record to aid the federal courts in their review. Cf. 28 U. S. C. § 2254(d) (requiring a federal court reviewing a habeas petition to presume as correct factual findings made by a state court).

The facts of the present case underscore the need for a rule encouraging exhaustion of all federal claims. In his opinion, the District Court Judge wrote that "there is such mixture of violations that one cannot be separated from and considered independently of the others." Because the two unexhausted claims for relief were intertwined with the exhausted ones, the judge apparently considered all of the claims in ruling on the petition. Requiring dismissal of petitions containing both exhausted and unexhausted claims will relieve the district courts of the difficult if not impossible task of deciding when claims are related, and will reduce the temptation to consider unexhausted claims.

In his dissent, JUSTICE STEVENS suggests that the District Court properly evaluated the respondent's two exhausted claims "in the context of the entire trial." *Post,* at 541. Unquestionably, however, the District Court erred in considering unexhausted claims, for § 2254(b) expressly requires the prisoner to exhaust "the remedies available in the courts of the State." See n. 9, *supra.* Moreover, to the extent that exhausted and unexhausted claims are interrelated, the general rule among the Courts of Appeals is to dismiss mixed habeas petitions for exhaustion of all such claims. See, *e. g., Triplett* v. *Wyrick,* 549 F. 2d 57 (CA8 1977); *Miller* v. *Hall,* 536 F. 2d 967 (CA1 1976); *Hewett* v. *North Carolina,* 415 F. 2d 1316 (CA4 1969).

Rather than an "adventure in unnecessary lawmaking" (STEVENS, J., *post,* at 539), our holdings today reflect our in-

terpretation of a federal statute on the basis of its language and legislative history, and consistent with its underlying policies. There is no basis to believe that today's holdings will "complicate and delay" the resolution of habeas petitions (STEVENS, J., *post*, at 550), or will serve to "trap the unwary *pro se* prisoner." (BLACKMUN, J., *post*, at 530.) On the contrary, our interpretation of §§ 2254(b), (c) provides a simple and clear instruction to potential litigants: before you bring any claims to federal court, be sure that you first have taken each one to state court. Just as *pro se* petitioners have managed to use the federal habeas machinery, so too should they be able to master this straightforward exhaustion requirement. Those prisoners who misunderstand this requirement and submit mixed petitions nevertheless are entitled to resubmit a petition with only exhausted claims or to exhaust the remainder of their claims.

Rather than increasing the burden on federal courts, strict enforcement of the exhaustion requirement will encourage habeas petitioners to exhaust all of their claims in state court and to present the federal court with a single habeas petition. To the extent that the exhaustion requirement reduces piecemeal litigation, both the courts and the prisoners should benefit, for as a result the district court will be more likely to review all of the prisoner's claims in a single proceeding, thus providing for a more focused and thorough review.

## C

The prisoner's principal interest, of course, is in obtaining speedy federal relief on his claims. See *Braden* v. *30th Judicial Circuit Court of Kentucky, supra,* at 490. A total exhaustion rule will not impair that interest since he can always amend the petition to delete the unexhausted claims, rather than returning to state court to exhaust all of his claims. By invoking this procedure, however, the prisoner would risk forfeiting consideration of his unexhausted claims in federal court. Under 28 U. S. C. § 2254 Rule 9(b), a district court

may dismiss subsequent petitions if it finds that "the failure of the petitioner to assert those [new] grounds in a prior petition constituted an abuse of the writ." See n. 6, *supra*. The Advisory Committee to the Rules notes that Rule 9(b) incorporates the judge-made principle governing the abuse of the writ set forth in *Sanders* v. *United States*, 373 U. S. 1, 18 (1963), where this Court stated:

> "[I]f a prisoner deliberately withholds one of two grounds for federal collateral relief at the time of filing his first application, in the hope of being granted two hearings rather than one or for some other such reason, he may be deemed to have waived his right to a hearing on a second application presenting the withheld ground. The same may be true if, as in *Wong Doo*, the prisoner deliberately abandons one of his grounds at the first hearing. Nothing in the traditions of habeas corpus requires the federal courts to tolerate needless piecemeal litigation, or to entertain collateral proceedings whose only purpose is to vex, harass, or delay." [13]

See Advisory Committee Note to Habeas Corpus Rule 9(b), 28 U. S. C., p. 273. Thus a prisoner who decides to proceed only with his exhausted claims and deliberately sets aside his unexhausted claims risks dismissal of subsequent federal petitions.

---

[13] In *Wong Doo* v. *United States*, 265 U. S. 239 (1924), the petitioner brought two habeas corpus petitions to obtain release from the custody of a deportation order. The ground for relief contained in the second petition was also contained in the first petition, but had not been pursued in the first habeas proceeding. The Court held that because the petitioner "had full opportunity to offer proof" in the first hearing, the lower court should not consider the second petition. *Id.*, at 241. The present case, of course, is not controlled by *Wong Doo* because the respondent could not have litigated his unexhausted claims in federal court. Nonetheless, the case provides some guidance for the situation in which a prisoner deliberately decides not to exhaust his claims in state court before filing a habeas corpus petition.

## IV

In sum, because a total exhaustion rule promotes comity and does not unreasonably impair the prisoner's right to relief, we hold that a district court must dismiss habeas petitions containing both unexhausted and exhausted claims.[14] Accordingly, the judgment of the Court of Appeals is reversed, and the case is remanded for proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE BLACKMUN, concurring in the judgment.

The important issue before the Court in this case is whether the conservative "total exhaustion" rule espoused now by two Courts of Appeals, the Fifth and the Ninth Circuits, see *ante*, at 513, n. 5, is required by 28 U. S. C. §§ 2254(b) and (c), or whether the approach adopted by eight other Courts of Appeals—that a district court may review the *exhausted* claims of a mixed petition—is the proper interpretation of the statute. On this basic issue, I firmly agree with the majority of the Courts of Appeals.

I do not dispute the value of comity when it is applicable and productive of harmony between state and federal courts, nor do I deny the principle of exhaustion that §§ 2254(b) and (c) so clearly embrace. What troubles me is that the "total exhaustion" rule, now adopted by this Court, can be read into the statute, as the Court concedes, *ante*, at 516–517, only by sheer force; that it operates as a trap for the uneducated and indigent *pro se* prisoner-applicant; that it delays the resolution of claims that are not frivolous; and that it tends to increase, rather than to alleviate, the caseload burdens on both state and federal courts. To use the old expression, the Court's ruling seems to me to "throw the baby out with the bath water."

---

[14] Because of our disposition of this case, we do not reach the petitioner's claims that the grounds offered by the respondent do not merit habeas relief.

Although purporting to rely on the policies upon which the exhaustion requirement is based, the Court uses that doctrine as "a blunderbuss to shatter the attempt at litigation of constitutional claims without regard to the purposes that underlie the doctrine and that called it into existence." *Braden v. 30th Judicial Circuit Court of Ky.*, 410 U. S. 484, 490 (1973). Those purposes do not require the result the Court reaches; in fact, they support the approach taken by the Court of Appeals in this case and call for dismissal of only the unexhausted claims of a mixed habeas petition. Moreover, to the extent that the Court's ruling today has any impact whatsoever on the workings of federal habeas, it will alter, I fear, the litigation techniques of very few habeas petitioners.

## I

## A

The Court correctly observes, *ante*, at 516–517, that neither the language nor the legislative history of the exhaustion provisions of §§ 2254(b) and (c) mandates dismissal of a habeas petition containing both exhausted and unexhausted claims. Nor does precedent dictate the result reached here. In *Picard v. Connor*, 404 U. S. 270 (1971), for example, the Court ruled that "once the federal *claim* has been fairly presented to the state courts, the exhaustion requirement is satisfied." *Id.*, at 275 (emphasis supplied). Respondent complied with the direction in *Picard* with respect to his challenges to the trial court's limitation of cross-examination of the victim and to at least some of the prosecutor's allegedly improper comments.

The Court fails to note, moreover, that prisoners are not compelled to utilize every available state procedure in order to satisfy the exhaustion requirement. Although this Court's precedents do not address specifically the appropriate treatment of mixed habeas petitions, they plainly suggest that state courts need not inevitably be given every opportunity to safeguard a prisoner's constitutional rights and to pro-

vide him relief before a federal court may entertain his habeas petition.[1]

B

In reversing the judgment of the Sixth Circuit, the Court focuses, as it must, on the purposes the exhaustion doctrine is intended to serve. I do not dispute the importance of the exhaustion requirement or the validity of the policies on which it is based. But I cannot agree that those concerns will be sacrificed by permitting district courts to consider *exhausted* habeas claims.

The first interest relied on by the Court involves an offshoot of the doctrine of federal-state comity. The Court hopes to preserve the state courts' role in protecting constitutional rights, as well as to afford those courts an opportunity to correct constitutional errors and—somewhat patronizingly—to "become increasingly familiar with and hospitable toward federal constitutional issues." *Ante*, at 519. My proposal, however, is not inconsistent with the Court's concern for comity: indeed, the state courts have occasion to rule first on every constitutional challenge, and

---

[1] In *Brown* v. *Allen*, 344 U. S. 443, 447 (1953), the Court made clear that the exhaustion doctrine does not foreclose federal habeas relief whenever a state remedy is available; once a prisoner has presented his claim to the highest state court on direct appeal, he need not seek collateral relief from the State. Additionally, in *Braden* v. *30th Judicial Circuit Court of Ky.*, 410 U. S. 484 (1973), the Court permitted consideration of a § 2254 petition seeking to force the State to afford the prisoner a speedy trial. Although the defendant had not yet been convicted, and therefore obviously had not utilized all available state procedures, and although he could have raised his Sixth Amendment claim as a defense at trial, the Court found the interests underlying the exhaustion doctrine satisfied because the petitioner had presented his existing constitutional claim to the state courts and because he was not attempting to abort a state proceeding or disrupt the State's judicial process. See *id.*, at 491. Finally, in *Roberts* v. *LaVallee*, 389 U. S. 40 (1967), the Court held that an intervening change in the relevant state law, which had occurred subsequent to the prisoner's exhaustion of state remedies and which suggested that the state courts would look favorably on the request for relief, did not necessitate a return to state court.

have ample opportunity to correct any such error, before it is considered by a federal court on habeas.

In some respects, the Court's ruling appears more destructive than solicitous of federal-state comity. Remitting a habeas petitioner to state court to exhaust a patently frivolous claim before the federal court may consider a serious, exhausted ground for relief hardly demonstrates respect for the state courts. The state judiciary's time and resources are then spent rejecting the obviously meritless unexhausted claim, which doubtless will receive little or no attention in the subsequent federal proceeding that focuses on the substantial exhausted claim. I can "conceive of no reason why the State would wish to burden its judicial calendar with a narrow issue the resolution of which is predetermined by established federal principles." *Roberts* v. *LaVallee*, 389 U. S. 40, 43 (1967).[2]

The second set of interests relied upon by the Court involves those of federal judicial administration—ensuring that a § 2254 petition is accompanied by a complete factual record to facilitate review and relieving the district courts of the responsibility for determining when exhausted and unex-

---

[2] The Court fails to mention two related state interests relied upon by the petitioner warden—ensuring finality of convictions and avoiding the mooting of pending state proceedings. The finality of a conviction in no way depends, however, on a federal court's treatment of a mixed habeas petition. If a State is concerned with finality, it may adopt a rule directing defendants to present all their claims at one time; a prisoner's failure to adhere to that procedural requirement, absent cause and prejudice, would bar subsequent federal habeas relief on additional grounds. See *Wainwright* v. *Sykes*, 433 U. S. 72 (1977); *Murch* v. *Mottram*, 409 U. S. 41 (1972). As long as the State permits a prisoner to continue challenging his conviction on alternative grounds, a federal court's dismissal of a mixed habeas petition will provide no particular incentive for consolidation of all potential claims in a single state proceeding.

A pending state proceeding involving claims not included in the prisoner's federal habeas petition will be mooted only if the federal court grants the applicant relief. Even in those cases, though, the state courts will be saved the trouble of undertaking the useless exercise of ruling on unexhausted claims that are unnecessary to the disposition of the case.

hausted claims are interrelated. If a prisoner has presented a particular challenge in the state courts, however, the habeas court will have before it the complete factual record relating to that claim.[3] And the Court's Draconian approach is hardly necessary to relieve district courts of the obligation to consider exhausted grounds for relief when the prisoner also has advanced interrelated claims not yet reviewed by the state courts. When the district court believes, on the facts of the case before it, that the record is inadequate or that full consideration of the exhausted claims is impossible, it has always been free to dismiss the entire habeas petition pending resolution of unexhausted claims in the state courts. Certainly, it makes sense to commit these decisions to the discretion of the lower federal courts, which will be familiar with the specific factual context of each case.

The federal courts that have addressed the issue of interrelatedness have had no difficulty distinguishing related from unrelated habeas claims. Mixed habeas petitions have been dismissed *in toto* when "the issues before the federal court logically depend for their relevance upon resolution of an unexhausted issue," *Miller* v. *Hall*, 536 F. 2d 967, 969 (CA1 1976), or when consideration of the exhausted claim "would necessarily be affected . . ." by the unexhausted claim, *United States ex rel. McBride* v. *Fay*, 370 F. 2d 547, 548 (CA2 1966). Thus, some of the factors to be considered in determining whether a prisoner's grounds for collateral relief are interrelated are whether the claims are based on the same constitutional right or factual issue, and whether they require an understanding of the totality of the circumstances and therefore necessitate examination of the entire record. Compare *Johnson* v. *United States District Court*, 519 F. 2d 738, 740 (CA8 1975) (prisoner's challenge to the voluntariness of his guilty plea intertwined with his claims that at the time

---

[3] The district court is free, of course, to order expansion of the record. See 28 U. S. C. § 2254 Rule 7.

of the plea he was mentally incompetent and without effective assistance of counsel); *United States ex rel. DeFlumer* v. *Mancusi*, 380 F. 2d 1018, 1019 (CA2 1967) (dispute regarding the voluntariness of the prisoner's guilty plea "would necessarily affect the consideration of the coerced confession claim, because a voluntary guilty plea entered on advice of counsel is a waiver of all non-jurisdictional defects in any prior stage of the proceedings"); *United States ex rel. McBride* v. *Fay*, 370 F. 2d, at 548; and *United States ex rel. Martin* v. *McMann*, 348 F. 2d 896, 898 (CA2 1965) (defendant's challenge to the voluntariness of his confession related to his claim that the confession was obtained in violation of his right to the assistance of counsel and without adequate warnings), with *Miller* v. *Hall*, 536 F. 2d, at 969 (no problem of interrelationship when exhausted claims involved allegations that the police lacked probable cause to search defendant's van and had no justification for failing to secure a search warrant, and unexhausted claim maintained that the arresting officer had committed perjury at the suppression hearing); and *United States ex rel. Levy* v. *McMann*, 394 F. 2d 402, 404 (CA2 1968).

The Court's interest in efficient administration of the federal courts therefore does not require dismissal of mixed habeas petitions. In fact, that concern militates *against* the approach taken by the Court today. In order to comply with the Court's ruling, a federal court now will have to review the record in a § 2254 proceeding at least summarily in order to determine whether all claims have been exhausted. In many cases a decision on the merits will involve only negligible additional effort. And in other cases the court may not realize that one of a number of claims is unexhausted until after substantial work has been done. If the district court must nevertheless dismiss the entire petition until all grounds for relief have been exhausted, the prisoner will likely return to federal court eventually, thereby necessitating duplicative examination of the record and consideration of the exhausted

claims—perhaps by another district judge. See JUSTICE STEVENS' dissenting opinion, *post*, at 545. Moreover, when the § 2254 petition does find its way back to federal court, the record on the exhausted grounds for relief may well be stale and resolution of the merits more difficult.[4]

The interest of the prisoner and of society in "preserv[ing] the writ of habeas corpus as a 'swift and imperative remedy in all cases of illegal restraint or confinement,'" *Braden* v. *30th Judicial Circuit Court of Ky.*, 410 U. S., at 490, is the final policy consideration to be weighed in the balance. Compelling the habeas petitioner to repeat his journey through the entire state and federal legal process before receiving a ruling on his exhausted claims obviously entails substantial delay.[5] And if the prisoner must choose between undergoing that delay and forfeiting unexhausted claims, see *ante*, at 520–521, society is likewise forced to sacrifice either the swiftness of habeas or its availability to remedy all unconstitutional imprisonments.[6] Dismissing only unexhausted

---

[4] A related federal interest mentioned by the Court is avoiding piecemeal litigation and encouraging a prisoner to bring all challenges to his state-court conviction in one § 2254 proceeding. As discussed in Part II, *infra*, however, the Court's approach cannot promote that interest because Congress has expressly permitted successive habeas petitions unless the subsequent petitions constitute "an abuse of the writ." 28 U. S. C. § 2254 Rule 9(b).

[5] In *United States ex rel. Irving* v. *Casscles*, 448 F. 2d 741, 742 (CA2 1971), cert. denied, 410 U. S. 925 (1973), and *United States ex rel. DeFlumer* v. *Mancusi*, 380 F. 2d 1018, 1019 (CA2 1967), for example, mixed habeas petitions were dismissed because the exhausted and unexhausted claims were interrelated. In each case, the prisoner was unable to obtain a federal-court judgment on the merits of his exhausted claims for years. See *United States ex rel. Irving* v. *Henderson*, 371 F. Supp. 1266 (SDNY 1974); *United States ex rel. DeFlumer* v. *Mancusi*, 443 F. 2d 940 (CA2), cert. denied, 404 U. S. 914 (1971).

[6] The petitioner warden insists, however, that improved judicial efficiency will benefit those prisoners with meritorious claims because their petitions will not be lost in the flood of frivolous § 2254 petitions. Even if the Court's approach were to contribute to the efficient administration of

grounds for habeas relief, while ruling on the merits of all unrelated exhausted claims, will diminish neither the promptness nor the efficacy of the remedy and, at the same time, will serve the state and federal interests described by the Court.[7]

## II

The Court's misguided approach appears to be premised on the specter of "the sophisticated litigious prisoner intent upon a strategy of piecemeal litigation . . . ," whose aim is to have more than one day in court. *Galtieri* v. *Wainwright*, 582 F. 2d 348, 369 (CA5 1978) (en banc) (dissenting opinion). Even if it could be said that the Court's view accurately reflects reality, its ruling today will not frustrate the Perry Masons of the prison populations. To avoid dismissal, they will simply include only exhausted claims in each of many successive habeas petitions. Those subsequent petitions may be dismissed, as JUSTICE BRENNAN observes, only if the prisoner has "abused the writ" by deliberately choosing, for purposes of delay, not to include all his claims in one petition. See *post*, at 535–536 (opinion concurring in part and dissenting in part). And successive habeas petitions that meet the

---

justice, the contours of the exhaustion doctrine have no relationship to the merits of a habeas petition: a prisoner with one substantial exhausted claim will be forced to return to state court to litigate his remaining challenges, whereas a petitioner with frivolous, but exhausted, claims will receive, it is to be hoped, a prompt ruling on the merits from the federal court. See STEVENS, J., dissenting, *post*, at 545.

[7] Even the Fifth and Ninth Circuits, which require dismissal of mixed habeas petitions in the typical case, do not follow the extreme position the Court takes today. The Ninth Circuit permits district courts to consider the exhausted grounds in a mixed petition if the prisoner has a reasonable explanation for failing to exhaust the other claims or if the state courts have delayed in ruling on those claims. See *Gonzales* v. *Stone*, 546 F. 2d 807, 810 (1976). The Fifth Circuit will review the merits of exhausted claims contained in a mixed petition if the district court has considered those claims. See *Galtieri* v. *Wainwright*, 582 F. 2d 348, 361–362 (1978) (en banc).

"abuse of the writ" standard have always been subject to dismissal, irrespective of the Court's treatment of mixed petitions today. The Court's ruling in this case therefore provides no additional incentive whatsoever to consolidate all grounds for relief in one § 2254 petition.

Instead of deterring the sophisticated habeas petitioner who understands, and wishes to circumvent, the rules of exhaustion, the Court's ruling will serve to trap the unwary *pro se* prisoner who is not knowledgeable about the intricacies of the exhaustion doctrine and whose only aim is to secure a new trial or release from prison. He will consolidate all conceivable grounds for relief in an attempt to accelerate review and minimize costs. But, under the Court's approach, if he unwittingly includes in a § 2254 motion a claim not yet presented to the state courts, he risks dismissal of the entire petition and substantial delay before a ruling on the merits of his exhausted claims.

The Court suggests that a prisoner who files a mixed habeas petition will have the option of amending or resubmitting his complaint after deleting the unexhausted claims. See *ante*, at 510, 520. To the extent that prisoners are permitted simply to strike unexhausted claims from a § 2254 petition and then proceed as if those claims had never been presented, I fail to understand what all the fuss is about. In that event, the Court's approach is virtually indistinguishable from that of the Court of Appeals, which directs the district court itself to dismiss unexhausted grounds for relief.

I fear, however, that prisoners who mistakenly submit mixed petitions may not be treated uniformly. A prisoner's opportunity to amend a § 2254 petition may depend on his awareness of the existence of that alternative or on a sympathetic district judge who informs him of the option and permits the amendment. See Fed. Rule Civ. Proc. 15(a). If the prisoner is required to refile the petition after striking the unexhausted claims, he may have to begin the process anew and thus encounter substantial delay before his com-

plaint again comes to the district court's attention. See STEVENS, J., *post*, at 546, n. 15.

Adopting a rule that will afford knowledgeable prisoners more favorable treatment is, I believe, antithetical to the purposes of the habeas writ. Instead of requiring a habeas petitioner to be familiar with the nuances of the exhaustion doctrine and the process of amending a complaint, I would simply permit the district court to dismiss unexhausted grounds for relief and consider exhausted claims on the merits.

## III

Although I would affirm the Court of Appeals' ruling that the exhaustion doctrine requires dismissal of only the unexhausted claims in a mixed habeas petition, I would remand the case for reconsideration of the merits of respondent's constitutional arguments. As the Court notes, the District Court erred in considering both exhausted and unexhausted claims when ruling on Lundy's § 2254 petition. See *ante*, at 511–513. The Court of Appeals attempted to recharacterize the District Court's grant of relief as premised on only the exhausted claims and ignored the District Court's conclusion that the exhausted and unexhausted claims were interrelated. See App. 95–96.[8]

Even were the Court of Appeals' recharacterization accurate, that court affirmed the District Court on the ground that respondent's constitutional rights had been "seriously impaired by the improper limitation of his counsel's cross-examination of the prosecutrix and by the prosecutorial mis-

---

[8] This Court implies approval of the District Court's finding of interrelatedness, see *ante*, at 519, but I am not convinced that the District Court's conclusion was compelled. Conceivably, habeas relief could be justified only on the basis of a determination that the cumulative impact of the four alleged errors so infected the trial as to violate respondent's due process rights. But Lundy's four claims, on their face, are distinct in terms of the factual allegations and legal conclusions on which they depend.

conduct." *Id.*, at 96. The court does not appear to have specified which allegations of prosecutorial misconduct it considered in reaching this conclusion, and the record does not reflect whether the court improperly took into account instances of purported misconduct that respondent has never challenged in state court. See *ante*, at 511–512, n. 3. This ambiguity is of some importance because the court's general statement does not indicate whether the court would have granted habeas relief on the confrontation claim alone, or whether its judgment is based on the combined effect of the limitation of cross-examination and the asserted prosecutorial misconduct.

I therefore would remand the case, directing that the courts below dismiss respondent's unexhausted claims and examine those that have been properly presented to the state courts in order to determine whether they are interrelated with the unexhausted grounds and, if not, whether they warrant collateral relief.

JUSTICE BRENNAN, with whom JUSTICE MARSHALL joins, concurring in part and dissenting in part.

I join the opinion of the Court (Parts I, II, III–A, III–B, and IV, *ante*), but I do not join in the opinion of the plurality (Part III–C, *ante*). I agree with the Court's holding that the exhaustion requirement of 28 U. S. C. §§ 2254(b), (c) obliges a federal district court to dismiss, without consideration on the merits, a habeas corpus petition from a state prisoner when that petition contains claims that have not been exhausted in the state courts, "leaving the prisoner with the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims to the district court." *Ante*, at 510. But I disagree with the plurality's view, in Part III–C, that a habeas petitioner must "risk forfeiting consideration of his unexhausted claims in federal court" if he "decides to proceed only with his exhausted claims and deliberately sets aside his

unexhausted claims" in the face of the district court's refusal
to consider his "mixed" petition. *Ante*, at 520, 521. The
issue of Rule 9(b)'s proper application to successive petitions
brought as the result of our decision today is not before us—it
was not among the questions presented by petitioner, nor
was it briefed and argued by the parties. Therefore, the
issue should not be addressed until we have a case presenting
it. In any event, I disagree with the plurality's proposed
disposition of the issue. In my view, Rule 9(b) cannot be
read to permit dismissal of a subsequent petition under the
circumstances described in the plurality's opinion.

I

The plurality recognizes, as it must, that in enacting Rule
9(b) Congress explicitly adopted the "abuse of the writ"
standard announced in *Sanders* v. *United States*, 373 U. S. 1
(1963). *Ante*, at 521. The legislative history of Rule 9(b)
illustrates the meaning of that standard. As transmitted by
this Court to Congress, Rule 9(b) read as follows:

> "SUCCESSIVE PETITIONS. A second or successive pe-
> tition may be dismissed if the judge finds that it fails to
> allege new or different grounds for relief and the prior
> determination was on the merits or, if new and different
> grounds are alleged, the judge finds that the failure of
> the petitioner to assert those grounds in a prior petition
> is *not excusable*." H. R. Rep. No. 94–1471, p. 8 (1976)
> (emphasis added).

The interpretive gloss placed upon proposed Rule 9(b) by
this Court's Advisory Committee on the Rules Governing
§ 2254 Cases in the United States District Courts was that:

> "With reference to a successive application asserting a
> new ground or one not previously decided on the merits,
> the court in *Sanders* noted:
>
>> ['']In either case, full consideration of the merits of
>> the new application can be avoided only if there has

been an abuse of the writ * * * and this the Government has the burden of pleading. * * *

['']Thus, for example, if a prisoner deliberately withholds one of two grounds for federal collateral relief at the time of filing his first application, * * * he may be deemed to have waived his right to a hearing on a second application presenting the withheld ground.[']

"373 U. S., at 17–18.

"Subdivision (b) [of Rule 9] has incorporated this principle and requires that the judge find petitioner's failure to have asserted the new grounds in the prior petition to be *inexcusable*." Advisory Committee Note to Rule 9(b), 28 U. S. C., p. 273 (emphasis added).

But Congress did not believe that this Court's transmitted language, and the Advisory Committee Note explaining it, went far enough in protecting a state prisoner's right to gain habeas relief. In its Report on proposed Rule 9(b), the House Judiciary Committee stated that, in its view, "the 'not excusable' language [of the proposed Rule] created a new and undefined standard *that gave a judge too broad a discretion to dismiss a second or successive petition*." H. R. Rep. No. 94–1471, *supra*, at 5 (emphasis added). The Judiciary Committee thus recommended that the words, "is not excusable," be replaced by the words, "constituted an abuse of the writ." *Id.*, at 5, 8. This change, the Committee believed, would bring Rule 9(b) "into conformity with existing law." *Id.*, at 5. It was in the Judiciary Committee's revised form—employing the "abusive" standard for dismissal—that Rule 9(b) became law.

## II

It is plain that a proper construction of Rule 9(b) must be consistent with its legislative history. This necessarily entails an accurate interpretation of the *Sanders* standard, on which the Rule is based. It also requires consideration of

the explanatory language of the Advisory Committee, and Congress' subsequent strengthening amendment to the text of the Rule. But the plurality, entirely misreading *Sanders*, embraces an interpretation of the Rule 9(b) standard that is manifestly incorrect, and patently inconsistent with the Advisory Committee's exposition and Congress' expressed expectations.

The relevant language from *Sanders*, quoted by the plurality, *ante*, at 521, is as follows:

> "[I]f a prisoner deliberately withholds one of two grounds for federal collateral relief at the time of filing his first application, in the hope of being granted two hearings rather than one or for some other such reason, he may be deemed to have waived his right to a hearing on a second application presenting the withheld ground. The same may be true if, as in *Wong Doo*, the prisoner deliberately abandons one of his grounds at the first hearing. Nothing in the traditions of habeas corpus requires the federal courts to tolerate needless piecemeal litigation, or to entertain collateral proceedings whose only purpose is to vex, harass, or delay." 373 U. S., at 18.

From this language the plurality concludes: "Thus a prisoner who decides to proceed only with his exhausted claims and deliberately sets aside his unexhausted claims risks dismissal of subsequent federal petitions." *Ante*, at 521.

The plurality's conclusion simply distorts the meaning of the quoted language. *Sanders* was plainly concerned with "a prisoner *deliberately* withhold[ing] one of two grounds" for relief "in the hope of being granted two hearings rather than one or for some other such reason." *Sanders* also notes that waiver might be inferred where "the prisoner *deliberately* abandons one of his grounds at the first hearing." Finally, *Sanders* states that dismissal is appropriate either when the court is faced with "*needless* piecemeal litigation" or with

"collateral proceedings *whose only purpose is to vex, harass, or delay.*" Thus *Sanders* made it crystal clear that dismissal for "abuse of the writ" is *only* appropriate when a prisoner was free to include all of his claims in his first petition, but *knowingly* and *deliberately* chose not to do so in order to get more than "one bite at the apple." The plurality's interpretation obviously would allow dismissal in a much broader class of cases than *Sanders* permits.

This Court is free, of course, to overrule *Sanders*. But even that course would not support the plurality's conclusion. For Congress incorporated the "judge-made" *Sanders* principle into positive law when it enacted Rule 9(b). That principle, as explained by the Advisory Committee's Note, *at least* "requires that the [habeas] judge find petitioner's failure to have asserted the new grounds in the prior petition to be *inexcusable.*" Indeed, Congress went beyond the Advisory Committee's language, believing that the "inexcusable" standard made the dismissal of successive petitions too easy. Congress instead required the habeas court to find a successive petitioner's behavior "abusive" before the drastic remedy of dismissal could be employed. That is how Congress understood the *Sanders* principle, and the plurality is simply not free to ignore that understanding, because it is now embedded in the statutory language of Rule 9(b).

### III

The plurality's attempt to apply its interpretation of *Sanders* only reinforces my conclusion that the plurality has misread that case. The plurality hypothesizes a prisoner who presents a "mixed" habeas petition that is dismissed without any examination of its claims on the merits, and who, after his exhausted claims are rejected, presents a second petition containing the previously unexhausted claims. The plurality then equates the position of such a prisoner with that of the "abusive" habeas petitioner discussed in the *Sanders* passage. But in my view, the position of the plurality's hypo-

thetical prisoner is obviously very different. If the habeas court refuses to entertain a "mixed" petition—as it must under the plurality's view—then the prisoner's "abandonment" of his unexhausted claims cannot in any meaningful sense be termed "deliberate," as that term was used in *Sanders*. There can be no "abandonment" when the prisoner *is not permitted to proceed* with his unexhausted claims. If he is to gain "speedy federal relief on his claims"—to which he is entitled, as the Court recognizes with its citation to *Braden, ante*, at 520—then the prisoner *must* proceed *only* with his exhausted claims. Thus the prisoner in such a case cannot be said to possess a "purpose to vex, harass, or delay," nor any "hope of being granted two hearings rather than one."

Moreover, the plurality's suggested treatment of its hypothetical prisoner flatly contradicts the Rule 9(b) standard as explained by the Advisory Committee, and *a fortiori* contradicts that standard as strengthened and extended by Congress. After the prisoner's first, "mixed" petition has been mandatorily dismissed without any scrutiny, after his exhausted claims have been rejected, and after he has then presented his previously unexhausted claims in a second petition, there is simply no way in which a habeas court could "find petitioner's failure to have asserted the new grounds in the prior petition to be *inexcusable*." On the contrary, petitioner's failure to have asserted the "new," previously unexhausted claims in the prior petition could only be found to have been *required by the habeas court itself*, as a condition for its consideration of the exhausted claims. If the plurality's interpretation of Rule 9(b) cannot satisfy the Advisory Committee's "inexcusable" standard, then it falls even further short of the higher, "abusive" standard eventually adopted by Congress.

## IV

I conclude that when a prisoner's original, "mixed" habeas petition is dismissed without any examination of its claims on the merits, and when the prisoner later brings a second peti-

tion based on the previously unexhausted claims that had earlier been refused a hearing, then the remedy of dismissal for "abuse of the writ" cannot be employed against that second petition, absent unusual factual circumstances truly suggesting abuse. This conclusion is to my mind inescapably compelled not only by *Sanders*, but also by the Advisory Committee explanation of the Rule, and by Congress' subsequent incorporation of the higher, "abusive" standard into the Rule. The plurality's conclusion, in contrast, has no support whatever from any of these sources. Nor, of course, does it have the support of a majority of the Court.*

JUSTICE WHITE, concurring in part and dissenting in part.

I agree with most of JUSTICE BRENNAN's opinion; but like JUSTICE BLACKMUN, I would not require a "mixed" petition to be dismissed in its entirety, with leave to resubmit the exhausted claims. The trial judge cannot rule on the unexhausted issues and should dismiss them. But he should rule on the exhausted claims unless they are intertwined with those he must dismiss or unless the habeas petitioner prefers to have his entire petition dismissed. In any event, if the judge rules on those issues that are ripe and dismisses those that are not, I would not tax the petitioner with abuse of the writ if he returns with the latter claims after seeking state relief.

JUSTICE STEVENS, dissenting.

This case raises important questions about the authority of federal judges. In my opinion the District Judge properly exercised his statutory duty to consider the merits of the claims advanced by respondent that previously had been rejected by the Tennessee courts. The District Judge ex-

---

*JUSTICE WHITE rejects the plurality's conclusion in Part III–C, *ante*, see *post*, this page, as does JUSTICE BLACKMUN, see *ante*, at 529. JUSTICE STEVENS does not reach this issue.

ceeded, however, what I regard as proper restraints on the scope of collateral review of state-court judgments. Ironically, instead of correcting his error, the Court today fashions a new rule of law that will merely delay the final disposition of this case and, as JUSTICE BLACKMUN demonstrates, impose unnecessary burdens on both state and federal judges.

An adequate explanation of my disapproval of the Court's adventure in unnecessary lawmaking requires some reference to the facts of this case and to my conception of the proper role of the writ of habeas corpus in the administration of justice in the United States.

## I

Respondent was convicted in state court of rape and a crime against nature. The testimony of the victim was corroborated by another eyewitness who was present during the entire sadistic episode. The evidence of guilt is not merely sufficient; it is convincing. As is often the case in emotional, controverted, adversary proceedings,.trial error occurred. Two of those errors—a remark by the prosecutor[1] and a limitation on defense counsel's cross-examination

---

[1] At trial, the prosecutor questioned the eyewitness concerning "difficulties" that her sister had encountered while dating the respondent. In response to an objection to the materiality of the inquiry, the prosecutor explained, in the presence of the jury, that "I would think the defendant's violent nature would be material to this case in the light of what the victim has testified to." App. 17. The trial court excused the jury to determine the admissibility of the evidence; it ruled that the collateral inquiry was "too far removed to be material and relevant." *Id.*, at 22. After the jury had returned, the court instructed it to disregard the prosecutor's remarks.

Respondent objected to the prosecutor's statement on direct appeal. After reciting the challenged events, the Tennessee Court of Criminal Appeals recognized that "State's counsel made some remarks in the presence of the jury that were overly zealous in support of this incompetent line of proof, and in a different case could constitute prejudicial error." *Lundy*

of the victim[2]—were recognized by the Tennessee Court of Criminal Appeals, but held to be harmless in the context of the entire case. Because the state appellate court considered and rejected these two errors as a basis for setting aside his conviction, respondent has exhausted his state remedies with respect to these two claims.

In his application in federal court for a writ of habeas corpus, respondent alleged that these trial errors violated his constitutional rights to confront the witnesses against him and to obtain a fair trial. In his petition, respondent also al-

---

v. *State*, 521 S. W. 2d 591, 595 (1974). The court ruled, however, that "in the context of the undisputed facts of this case we hold any error to have been harmless beyond a reasonable doubt." *Ibid.*

[2] Defense counsel cross-examined the victim concerning her prior sexual activity. When the victim responded that she could not remember certain activity, counsel attempted to question her concerning statements that she apparently had made in an earlier interview with defense counsel. The prosecutor objected to this questioning on the ground that, during the interview, defense counsel had only disclosed that he was a lawyer involved in the case, and had not told the victim that he was counsel for the defendant. The trial court sustained the objection. The court permitted defense counsel to continue to question the victim concerning her prior sexual activity, but refused to permit him to refer to his earlier conversation with the victim. App. 13.

On appeal, respondent objected to the trial court's ruling, and also claimed that the prosecutor had prejudiced him by suggesting, before the jury, that defense counsel had acted unethically in not specifically identifying his involvement in the case. The state appellate court rejected respondent's claims, stating:

"We note that the trial judge. permitted cross-examination upon the same subject matter, but simply ruled out predicating the cross-examination questions upon the prior questions and answers. From the tender of proof in the record we do not believe that defendant was prejudiced by what we deem to have been too restrictive a ruling. Defense counsel was under no positive duty to affirmatively identify his role in the upcoming case before questioning a witness. He apparently made no misrepresentation, and was apparently seeking the truth. State's counsel was unduly critical of defense counsel in indicating before the jury that State's counsel should have been present at the interview, etc., but we hold this error to be harmless in the context of this case." 521 S. W. 2d, at 596.

leged that the prosecutor had impermissibly commented on his failure to testify[3] and that the trial judge had improperly instructed the jury that "every witness is presumed to swear the truth."[4] Because these two additional claims had not been presented to the Tennessee Court of Criminal Appeals, the Federal District Judge concluded that he could "not consider them in the constitutional framework." App. 88. He added, however, that "in assessing the atmosphere of the cause taken as a whole these items may be referred to collaterally."[5]

In considering the significance of respondent's two exhausted claims, the District Court thus evaluated them in the context of the entire trial record. That is precisely what the Tennessee Court of Criminal Appeals did in arriving at its conclusion that these claims, identified as error, were not sufficiently prejudicial to justify reversing the conviction and ordering a retrial.[6] In considering whether the error in these two exhausted claims was sufficient to justify a grant of ha-

---

[3] In his closing argument, the prosecutor stated:

"The only story we've heard about what happened from about 8:15 of the night of March 16th until about four o'clock in the morning of March 17th came from the State's witnesses." App. 27.

[4] The judge instructed the jury:

"The jurors are the exclusive judges of the facts and the credibility of the witnesses. You are judges of the law under the direction of the court. If there are conflicts in the evidence, you must reconcile them, if you can, without hastily or rashly concluding that any witness has sworn falsely, for every witness is presumed to swear the truth." *Id.*, at 31.

[5] The court stated in full:

"Since grounds three and four have not been presented to the state court there has been no exhaustion of remedies as to these two. Thus this court will not consider them in the constitutional framework. However, in assessing the atmosphere of the cause taken as a whole these items may be referred to collaterally." *Id.*, at 88.

[6] The appellate court found the prosecutor's improper remark to have been harmless "in the context of the undisputed facts of this case"; the limitation of cross-examination harmless "in the context of this case." See nn. 1, 2, *supra.*

beas corpus relief, the federal court—like the state court—had a duty to look at the context in which the error occurred to determine whether it was either aggravated or mitigated by other aspects of the proceeding.[7] The state court and the federal court formed differing judgments based on that broad review. I happen to share the appraisal of the state court on the merits, but I believe that the procedure followed by the federal court was entirely correct.

The Court holds, however, that the District Court committed two procedural errors. "Unquestionably," according to the Court, it was wrong for the District Court to consider the portions of the trial record described in the unexhausted claims in evaluating those claims that had been exhausted. *Ante*, at 519. More fundamentally, according to the Court, it was wrong for the District Court even to consider the merits of the *exhausted* claims because the prisoner had included unexhausted claims in his pleadings. Both of the Court's holdings are unsatisfactory for the same basic reason: the Court assumes that the character of all claims alleged in habeas corpus petitions is the same. Under the Court's analysis, *any* unexhausted claim asserted in a habeas corpus petition—no matter how frivolous—is sufficient to command the district judge to postpone relief on a meritorious exhausted claim, no matter how obvious and outrageous the constitutional violation may be.

_____

[7] "Each case must be scrutinized on its particular facts to determine whether a trial error is harmless error or prejudicial error when viewed in the light of the trial record as a whole, not whether each isolated incident viewed by itself constitutes reversible error." *United States* v. *Grunberger*, 431 F. 2d 1062, 1069 (CA2 1970). Cf. *United States* v. *Socony-Vacuum Oil Co.*, 310 U. S. 150, 240 ("Of course, appeals to passion and prejudice may so poison the minds of jurors even in a strong case that an accused may be deprived of a fair trial. But each case necessarily turns on its own facts. And where, as here, the record convinces us that these statements were minor aberrations in a prolonged trial and not cumulative evidence of a proceeding dominated by passion and prejudice, reversal would not promote the ends of justice").

In my opinion claims of constitutional error are not fungible. There are at least four types. The one most frequently encountered is a claim that attaches a constitutional label to a set of facts that does not disclose a violation of any constitutional right. In my opinion, each of the four claims asserted in this case falls in that category. The second class includes constitutional violations that are not of sufficient import in a particular case to justify reversal even on direct appeal, when the evidence is still fresh and a fair retrial could be promptly conducted. *Chapman* v. *California*, 386 U. S. 18, 22; *Harrington* v. *California*, 395 U. S. 250, 254. A third category includes errors that are important enough to require reversal on direct appeal but do not reveal the kind of fundamental unfairness to the accused that will support a collateral attack on a final judgment. See, *e. g.*, *Stone* v. *Powell*, 428 U. S. 465.[8] The fourth category includes those er-

---

[8] In my opinion a claim generally belongs in this category if the purpose and significance of the constitutional rule is such that the Court enforces it prospectively but not retroactively, cf. *Linkletter* v. *Walker*, 381 U. S. 618, or if the probable significance of the claim is belied by the fact that otherwise competent defense counsel did not raise a timely objection, cf. *Estelle* v. *Williams*, 425 U. S. 501, 508, n. 3; *Wainwright* v. *Sykes*, 433 U. S. 72, 95–97 (STEVENS, J., concurring).

I recognize the apparent incongruity in suggesting that there is a class of constitutional error—not constitutionally harmless—that does not render a criminal proceeding fundamentally unfair. It may be argued, with considerable force, that a rule of procedure that is not necessary to ensure fundamental fairness is not worthy of constitutional status. The fact that such a category of constitutional error exists, however, is demonstrated by the jurisprudence of this Court concerning the retroactive application of newly recognized constitutional rights. See, *e. g.*, *Linkletter* v. *Walker*, *supra* (exclusionary rule of *Mapp* v. *Ohio*, 367 U. S. 643, not to be applied retroactively); *Tehan* v. *United States ex rel. Shott*, 382 U. S. 406 (rule of *Griffin* v. *California*, 380 U. S. 609, forbidding adverse comment on the defendant's failure to testify); *Johnson* v. *New Jersey*, 384 U. S. 719 (guidelines for custodial interrogation established in *Escobedo* v. *Illinois*, 378 U. S. 478, and *Miranda* v. *Arizona*, 384 U. S. 436); *Stovall* v. *Denno*, 388 U. S. 293 (rules requiring presence of counsel at pretrial identification

rors that are so fundamental that they infect the validity of the underlying judgment itself, or the integrity of the process by which that judgment was obtained. This category cannot be defined precisely; concepts of "fundamental fairness" are not frozen in time. But the kind of error that falls in this category is best illustrated by recalling the classic grounds for the issuance of a writ of habeas corpus—that the proceeding was dominated by mob violence;[9] that the prosecutor knowingly made use of perjured testimony;[10] or that the conviction was based on a confession extorted from the defendant by brutal methods.[11] Errors of this kind justify collateral relief no matter how long a judgment may have been final[12] and even though they may not have been preserved properly in the original trial.[13]

---

procedures); *DeStefano* v. *Woods,* 392 U. S. 631 (right to trial by jury in serious criminal cases and serious criminal contempts); *Michigan* v. *Payne,* 412 U. S. 47 (rule of *North Carolina* v. *Pearce,* 395 U. S. 711, requiring objective evidence on the record to justify greater sentence imposed after successful appeal). In ruling that a constitutional principle is not to be applied retroactively, the Court implicitly suggests that the right is not necessary to ensure the integrity of the underlying judgment; the Court certainly would not allow claims of such magnitude to remain unremedied.

It is possible that each of these decisions involves a general constitutional principle that—although not necessary to ensure fundamental fairness at trial—is typically vindicated through trial remedies. See, *e. g., Linkletter* v. *Walker, supra,* at 639; *Tehan* v. *United States ex rel. Shott, supra,* at 415; but see *Stovall* v. *Denno, supra,* at 298; *DeStefano* v. *Woods, supra,* at 633. Whatever the correct explanation of these decisions may be, they demonstrate that the Court's constitutional jurisprudence has expanded beyond the concept of ensuring fundamental fairness to the accused. My point here is simply that this expansion need not, and should not, be applied to collateral attacks on final judgments.

[9] *Moore* v. *Dempsey,* 261 U. S. 86.

[10] *Mooney* v. *Holohan,* 294 U. S. 103.

[11] See *Brown* v. *Mississippi,* 297 U. S. 278 (direct appeal).

[12] See, *e. g., DeMeerleer* v. *Michigan,* 329 U. S. 663; *Marino* v. *Ragen,* 332 U. S. 561.

[13] See *Wainwright* v. *Sykes, supra,* at 95–96, n. 3 (STEVENS, J., concurring). Justice Black noted in his opinion for the Court in *Chapman* v.

In this case, I think it is clear that neither the exhausted claims nor the unexhausted claims describe any error demonstrating that respondent's trial was fundamentally unfair. Since his lawyer found insufficient merit in the two unexhausted claims to object to the error at trial or to raise the claims on direct appeal,[14] I would expect that the Tennessee courts will consider them to have been waived as a matter of state law; thereafter, under the teaching of cases such as *Wainwright* v. *Sykes*, 433 U. S. 72, they undoubtedly will not support federal relief. This case is thus destined to return to the Federal District Court and the Court of Appeals where, it is safe to predict, those courts will once again come to the conclusion that the writ should issue. The additional procedure that the Court requires before considering the merits will be totally unproductive.

If my appraisal of respondent's exhausted claims is incorrect—if the trial actually was fundamentally unfair to the respondent—postponing relief until another round of review in the state and federal judicial systems has been completed is truly outrageous. The unnecessary delay will make it more difficult for the prosecutor to obtain a conviction on retrial if respondent is in fact guilty; if he is innocent, requiring him to languish in jail because he made a pleading error is callous indeed.

There are some situations in which a district judge should refuse to entertain a mixed petition until all of the prisoner's claims have been exhausted. If the unexhausted claim appears to involve error of the most serious kind and if it is reasonably clear that the exhausted claims do not, addressing the merits of the exhausted claims will merely delay the ulti-

---

*California*, 386 U. S. 18, 23, that "there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error." In support of this statement he cited *Payne* v. *Arkansas*, 356 U. S. 560 (coerced confession); *Gideon* v. *Wainwright*, 372 U. S. 335 (right to counsel at trial); *Tumey* v. *Ohio*, 273 U. S. 510 (impartial judge).

[14] See App. 27, 35–38, 75, 88.

mate disposition of the case. Or if an evidentiary hearing is necessary to decide the merits of both the exhausted and unexhausted claims, a procedure that enables all fact questions to be resolved in the same hearing should be followed. I therefore would allow district judges to exercise discretion to determine whether the presence of an unexhausted claim in a habeas corpus application makes it inappropriate to consider the merits of a properly pleaded exhausted claim. The inflexible, mechanical rule the Court adopts today arbitrarily denies district judges the kind of authority they need to administer their calendars effectively.[15]

## II

In recent years federal judges at times have lost sight of the true office of the great writ of habeas corpus. It is quite unlike the common-law writ of error that enabled a higher court to correct errors committed by a *nisi prius* tribunal in the trial of civil or criminal cases by ordering further proceedings whenever trial error was detected. The writ of habeas corpus is a fundamental guarantee of liberty.[16]

---

[15] I do not believe that the Court's "total exhaustion" requirement is simply a harmless rule of procedure whose prospective application will do nothing more than require district judges to instruct state prisoners to redraft their pleadings with black magic markers. If that is the full import of the decision today, the Court disparages federal judges; the Court implies that a federal judge will not obey the statutory command to grant relief on only exhausted claims if an unexhausted claim lurks somewhere in the prisoner's pleadings. More importantly, the unnecessary delay that the Court causes in the disposition of this case will not be limited to the instant proceeding; a similar outcome will follow every time an appellate court disagrees with a district court's judgment that a petition contains only exhausted claims. Given the ambiguity of many habeas corpus applications filed by *pro se* applicants, such differing appraisals should not be uncommon.

[16] "The uniqueness of habeas corpus in the procedural armory of our law cannot be too often emphasized. It differs from all other remedies in that it is available to bring into question the legality of a person's restraint and to require justification for such detention. Of course this does not mean

The fact that federal judges have at times construed their power to issue writs of habeas corpus as though it were tantamount to the authority of an appellate court considering a direct appeal from a trial court judgment has had two unfortunate consequences. First, it has encouraged prisoners to file an ever-increasing volume of federal applications that often amount to little more than a request for further review of asserted grounds for reversal that already have been adequately considered and rejected on direct review. Second, it has led this Court into the business of creating special procedural rules for dealing with this flood of litigation. The doctrine of nonretroactivity, the emerging "cause and prejudice" doctrine, and today's "total exhaustion" rule are examples of judicial lawmaking that might well have been avoided by confining the availability of habeas corpus relief to cases that truly involve fundamental unfairness.

When that high standard is met, there should be no question about the retroactivity of the constitutional rule being enforced. Nor do I believe there is any need to fashion definitions of "cause" and "prejudice" to determine whether an error that was not preserved at trial or on direct appeal is subject to review in a collateral federal proceeding.[17] The

that prison doors may readily be opened. It does mean that explanation may be exacted why they should remain closed. It is not the boasting of empty rhetoric that has treated the writ of habeas corpus as the basic safeguard of freedom in the Anglo-American world. 'The great writ of *habeas corpus* has been for centuries esteemed the best and only sufficient defence of personal freedom.' Mr. Chief Justice Chase, writing for the Court, in *Ex parte Yerger*, 8 Wall. 85, 95. Its history and function in our legal system and the unavailability of the writ in totalitarian societies are naturally enough regarded as one of the decisively differentiating factors between our democracy and totalitarian governments." *Brown* v. *Allen*, 344 U. S. 443, 512 (opinion of Frankfurter, J.).

[17] The failure of otherwise competent defense counsel to raise an objection at trial is often a reliable indication that the defendant was not denied fundamental fairness in the state-court proceedings. The person best qualified to recognize such error is normally a defendant's own lawyer. Thus, in searching for fundamental unfairness in a trial record, I attach

availability of habeas corpus relief should depend primarily on the character of the alleged constitutional violation and not on the procedural history underlying the claim.[18]

---

great importance to the character of the objection, if any, asserted by the defendant's counsel. But if such error is manifest, I would not wrestle with terms such as "cause" and "prejudice" to determine whether habeas corpus relief should be granted. Thus, in *Wainwright* v. *Sykes*, 433 U. S., at 94, I wrote separately because a straightforward analysis of the record revealed the lack of merit in the prisoner's claim. Had the record disclosed an error sufficiently serious to justify habeas corpus relief, I would not have joined a holding that an error of that character had been waived by a procedural default. As I pointed out in *Wainwright*, *supra*, at 95, even an express waiver by the defendant may be excused if the constitutional issue is sufficiently grave. That actually was the case in *Fay* v. *Noia*, 372 U. S. 391. There the Court held that habeas corpus relief was available notwithstanding the client's participation in the waiver decision, and notwithstanding the fact that the decision was made on a tactical basis. See 433 U. S., at 95, n. 3.

[18] It may be argued that limiting habeas corpus relief to claims involving the fundamental fairness of the underlying proceeding is no less "lawmaking" than engrafting a rule that a federal court may not entertain a habeas corpus application containing both exhausted and unexhausted claims. See *Stone* v. *Powell*, 428 U. S. 465, 522, 529 (BRENNAN, J., dissenting). It is interesting to note, however, that the Court unanimously has held that an error of law does not provide a basis for collateral attack on a federal judgment under 28 U. S. C. § 2255 unless the error constituted "'a fundamental defect which inherently results in a complete miscarriage of justice,'" *United States* v. *Timmreck*, 441 U. S. 780, 783 (quoting *Hill* v. *United States*, 368 U. S. 424, 428); see also *United States* v. *Addonizio*, 442 U. S. 178, 185, even though the statute authorizes a federal prisoner to petition for relief whenever he is "in custody under sentence . . . imposed in violation of the Constitution or *laws* of the United States . . . ." 28 U. S. C. § 2255 (emphasis added). See *Davis* v. *United States*, 417 U. S. 333, 343–344.

Although the two situations are not identical, I believe that the reasons that persuaded the Court to limit errors of law cognizable under 28 U. S. C. § 2255 also apply to constitutional errors under 28 U. S. C. § 2254. Section 2254 was enacted in 1948 as part of the revision and recodification of Title 28 of the United States Code. The Reviser's Notes concerning § 2254 provide simply that "[t]his new section is declaratory of existing law

The "total exhaustion" rule the Court crafts today demeans the high office of the great writ. Perhaps a rule of this kind would be an appropriate response to a flood of litigation requesting review of minor disputes. An assumption that most of these petitions are groundless might be thought to justify technical pleading requirements that would provide a mechanism for reducing the sheer number of cases in which the merits must be considered. But the Court's experience has taught us not only that most of these petitions lack merit, but also that there are cases in which serious injustice must

as affirmed by the Supreme Court. (See *Ex parte Hawk*, 1944, . . . 321 U. S. 114 . . . )." H. R. Rep. No. 308, 80th Cong., 1st Sess., A180 (1947). In 1948, constitutional rules of procedure were relatively few, those that did exist generally were not applicable to the States, and the scope of habeas corpus relief was narrow. As late as the decision in *Palko* v. *Connecticut*, 302 U. S. 319, 328, constitutional claims applicable to the States were limited to those hardships "so acute and shocking that our polity will not endure it"; to those " 'fundamental principles of liberty and justice which lie at the base of all our civil and political institutions.' " *Ibid.* (quoting *Hebert* v. *Louisiana*, 272 U. S. 312, 316). In *Schechtman* v. *Foster*, 172 F. 2d 339, 341 (CA2 1949), cert. denied, 339 U. S. 924, Judge Learned Hand wrote for the court, in affirming a denial of a habeas corpus petition alleging intentional use of perjured testimony, that "[i]f the [state] judge who denied that [claim] did in fact consider the evidence as a whole, and if he decided that it was not, even prima facie, sufficient to make out a case of deliberate presentation by the prosecution of perjured testimony, [petitioner] was accorded the full measure of his constitutional rights. . . . [T]he District Court could not properly have issued the writ, no matter how erroneous the judge had thought the state judge's conclusion that the evidence did not make out a prima facie case of the deliberate use of perjured testimony."

This Court has long since rejected these restrictive notions of the constitutional protections that are available to state criminal defendants. Nevertheless, the point remains that the law today is very different from what it was when the current habeas corpus statute was enacted in 1948. That statute was amended in 1966, but the amendments merely added to, and did not modify, the existing statutory language. Respected scholars may argue forcefully to the contrary, but in my opinion a limitation of habeas corpus relief to instances of fundamental unfairness is consistent with the intent of the Congress that enacted § 2254 in 1948.

be corrected by the issuance of the writ.[19]   In such cases, the statutory requirement that adequate state remedies be exhausted must, of course, be honored.   When a person's liberty is at stake, however, there surely is no justification for the creation of needless procedural hurdles.[20]

Procedural regularity is a matter of fundamental importance in the administration of justice.   But procedural niceties that merely complicate and delay the resolution of disputes are another matter.   In my opinion the federal habeas corpus statute should be construed to protect the former and, whenever possible, to avoid the latter.

I respectfully dissent.

---

[19] "The meritorious claims are few, but our procedures must ensure that those few claims are not stifled by undiscriminating generalities.   The complexities of our federalism and the workings of a scheme of government involving the interplay of two governments, one of which is subject to limitations enforceable by the other, are not to be escaped by simple, rigid rules which, by avoiding some abuses, generate others."   *Brown* v. *Allen*, 344 U. S., at 498 (opinion of Frankfurter, J.).

[20] "[W]e have consistently rejected interpretations of the habeas corpus statute that would suffocate the writ in stifling formalisms or hobble its effectiveness with the manacles of arcane and scholastic procedural requirements."   *Hensley* v. *Municipal Court*, 411 U. S. 345, 350.   Cf. *Marino* v. *Ragen*, 332 U. S., at 563–570 (Rutledge, J., concurring).