**UNITED STATES of America, ex rel. Robert W. MURRAY, Jr., Petitioner,**

v.

**Charles C. SCULLY, Superintendent of Green Haven Correctional Facility and Robert Abrams, Attorney General, State of New York, Respondents.**

No. 82 Civ. 2676 (IBC).

United States District Court, S.D. New York.

April 17, 1986.

Theodore Krieger, New York City, for petitioner.

Mario Merola, Dist. Atty., Bronx County, Bronx, N.Y., for respondents; Anastasios Sarikas, of counsel.

## OPINION

IRVING BEN COOPER, District Judge.

Petitioner applies for a writ of habeas corpus under 28 U.S.C. § 2254.

On January 31, 1980, following a jury trial in the Supreme Court of the State of New York, Bronx County, petitioner Murray was convicted of two counts of robbery in the first degree. On March 5, 1980, petitioner was sentenced as a second felony offender to seven and one half to fifteen years on each robbery conviction, to run concurrently.

Pursuant to New York Criminal Procedure Law ("CPL") § 440.10, he sought to vacate his conviction upon the grounds that he had been subject to a warrantless arrest at a private dwelling and he had not received *Miranda* warnings. The application was denied on July 31, 1981 for the reason that these issues should be raised on direct appeal; the Appellate Division of the New York Supreme Court, First Department, affirmed the denial of leave to appeal the order, also noting that the issues raised by petitioner could be reviewed on direct appeal.

Similar relief was sought by petitioner on July 29, 1981 by way of a writ of habeas corpus from the Supreme Court of the State of New York, Dutchess County, New York. After a hearing, the matter was referred to the trial court which considered it a motion for vacatur pursuant to CPL § 440.10. Although we have learned of no disposition by the trial court of this motion, it was considered by the Appellate Division together with the direct appeal from petitioner's conviction. On January 19, 1982, the Appellate Division unanimously affirmed petitioner's conviction without opinion. On March 24, 1982, the Court of Appeals of the State of New York denied his application for leave to appeal on the ground that petitioner's application presented no question of law.

Thereafter petitioner *pro se* sought review here. On September 20, 1982, we denied the issuance of a writ of habeas corpus on the ground that he had not exhausted his state remedies as required by *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). On December 2, 1982, we denied petitioner's application for a certificate of probable cause to appeal the dismissal of his habeas petition; the Second Circuit Court of Appeals affirmed on March 31, 1983.

Subsequently (between April 12, 1983 and June 7, 1983; exact date unclear), petitioner again moved this Court to reconsider our decision of September 20, 1982. By order dated February 8, 1984 (delay due to an unfortunate episode affecting a member of our staff), we determined that petitioner had indeed exhausted his state remedies because we learned through an affidavit of Assistant District Attorney Everett Hughes, Bronx County, that the issues raised by petitioner in state court had been addressed at the oral argument on defendant's appeal. In our February 8th order we also assigned counsel to petitioner to aid him in presenting his instant claims. The extraordinary large number of *pro se* applications initiated by this petitioner, together with the many judicial tribunals which considered and disposed of them, adds to our pride in the American system of justice for all—unparalleled throughout the world.

As revealed in the trial record, the key facts giving rise to the convictions were as follows: On June 7, 1979, Eve Nesland, Kim D'Amico, Alecia Venegas, and another person named Maria were working as employees at the Emandee Hosiery Shop located on the Grand Concourse near Fordham Road in Bronx County, New York. At approximately 4:00 P.M., two men entered the store and announced a "hold up." (Tr. 22; 75)[1] One of the men pulled a gun from a briefcase, took Ms. Venegas to the cash register, ordered her to open the register, and took money therefrom in addition to the watch and ring she had on. (Tr. 104–05) The other man, petitioner herein, pulled out a knife and took Ms. Nesland, Ms. D'Amico, Maria and a customer into a well-lit room in the back of the store. (Tr. 22) He held the knife to Ms. D'Amico's throat; Ms. Nesland stood next to her, shoulder to shoulder, at an angle. Ms. Nesland observed petitioner's face for five to seven minutes. The robbers left the store approximately ten minutes after they entered. (Tr. 25)

About an hour later, the same two perpetrators entered a gift shop located at 125 East Burnside Avenue in the Bronx. At that time the shop owner, Margaret Huh, and an employee, Nitza Maldonado, were working. The robbers again announced a "hold up." One of them, holding a gun, went to the register and, after struggling to open it, ordered Ms. Maldonado to do so; she did and he took the money it contained. He also demanded and received Ms. Maldonado's ring. (Tr. 139–40) Petitioner herein took Ms. Huh to the back of the store at knifepoint. Ms. Huh became extremely nervous, and Ms. Maldonado, concerned about her employer, kept her attention focused on the couple in the back of the store. Ms. Maldonado testified that she had a clear view of the petitioner; at one point, she was only two feet away from him. (Tr. 145)

After the robbers fled, Ms. Huh rang the store's burglar alarm. A chase ensued, and a neighboring merchant flagged down a police patrol car driven by Officer Julio Joglar. The officer apprehended the gunman, Eric Smith, who was carrying a briefcase containing a gun, money, earrings, a bracelet, and keys. (Tr. 216)

An investigation of these incidents ensued headed by Detective Michael Cassidy of the Bronx Police Task Force. As a result of his inquiry, he learned the identity of the knife-toter, petitioner Robert Murray. On June 22, 1979, Detective Cassidy

---

**1.** Throughout this opinion, the letters "Tr." followed by a number refer to the specified page in the trial transcript.

arrested petitioner in his own home pursuant to New York Criminal Procedure Law ("CPL") § 140.15(4), which under the circumstances authorized such entry into a private dwelling.

Later that evening at a lineup held at the 48th precinct, both Eve Nesland and Nitza Maldonado independently identified petitioner as the perpetrator who brandished a knife in the hosiery store and gift shop robberies.

Petitioner's grounds for appeal to the Appellate Division included alleged violations of his rights under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution. Specifically, he alleged the following constitutional violations: (1) a warrantless arrest; (2) denial of counsel at a post-arrest lineup; (3) unlawful search of his residence; and (4) denial of his rights to confront his accusers and to testify before a grand jury and at a preliminary hearing.

In his instant application, petitioner repeats only the first contention. He asserts that his warrantless arrest in his home, in the absence of exigent circumstances, constituted a violation of his rights under the fourth amendment.

### THE LAW

On June 22, 1979, the day petitioner was arrested, section 140.15(4) of the CPL authorized Detective Michael Cassidy to effect the arrest in petitioner's private dwelling. On April 15, 1980, however, the United States Supreme Court decided the case of *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), which held that, in the absence of exigent circumstances, the police are barred by the fourth amendment, as applied to the states by the fourteenth amendment, from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest. Subsequently, in *United States v. Johnson*, 457 U.S. 537, 100 S.Ct. 2579, 73 L.Ed.2d 202 (1982), the Court held that *Payton* should be applied retroactively to all convictions that were not final at the time *Payton* was decided.

In accordance with *Payton* and *Johnson,* petitioner contends that his convictions did not become final until after the Appellate Division rendered its determination, subsequent to the *Payton* decision. Thus, he argues, his arrest was illegal, rendering his identification tainted and likewise violative of his fourth amendment rights.

■ Our review of the applicable law leads us to the definite conclusions that the later identifications made of petitioner did not have to be suppressed. In *United States v. Crews*, 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980), the Supreme Court held:

> An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction.... Respondent is not himself a suppressible "fruit," and the illegality of his detention cannot deprive the Government of the opportunity to prove his guilt through the introduction of evidence wholly untainted by the police misconduct.

*Id.* at 474, 100 S.Ct. at 1251 (citations omitted). In *Crews*, the Court found that a victim of a robbery, based upon her observations at the time of the crime, may make a valid courtroom identification if it rests upon an independent recollection of her encounter with an assailant even though the assailant was illegally arrested. *Id.* at 472–73, 100 S.Ct. at 1250.

The evidence and findings in this case clearly demonstrate that the in court identification of petitioner stemmed from independent recollections of the witnesses. Judge Maurice W. Grey found at petitioner's *Wade* hearing that:

> ... the corporeal indentification procedure [was] not so impermissibly suggestive as to give rise ... to substantial likelihood of irreparable misidentification.

> The Court further finds that ... each identifying witness, by drawing on her memory of the events of the crimes, has retained such a definite image of the perpetrator that she's now able to made

an in court identification without any dependence or assistance from any possible pretrial confrontation and unaffected by any observation, prompting or suggestion that might have taken place.

(Minutes of the *Wade* hearing, at 124–25)

In accordance with the findings of the hearing judge, we do not hesitate to conclude that the witnesses to the two robberies in this case were able to make a valid identification of the petitioner based upon their individual, independent recollections of the details of the robberies.

██ In sum, pursuant to *Crews, supra,* petitioner himself is not a suppressible "fruit," and any conceivable taint (we conceive none) was removed by the eyewitnesses' independent in court identifications of petitioner as the knife wielding perpetrator.

## CONCLUSION

In accordance with the foregoing, we are constrained to, and do, deny petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

SO ORDERED.