798 F.2d 1414
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Jack DRINNON, Petitioner-Appellee,
v.
TENNESSEE STATE ATTORNEY GENERAL and Michael Dutton, Warden
(formerly James Rose, Warden), Respondents-Appellants.
 No. 85-5748.
 United States Court of Appeals, Sixth Circuit.
 July 3, 1986.
 
 Before JONES and WELLFORD, Circuit Judges, and GILMORE, District Judge.*
 WELLFORD, Circuit Judge.
 
 
 1
 The State appeals from the district court's grant of appellee's petition for habeas corpus ordering a reduction of sentence. We recite facts that could reasonably have been found by the state court jury giving the appellant favorable inferences.
 
 I. FACTS
 
 2
 Appellee Jack Drinnon was arrested along with codefendant, Larry Minor, for the shotgun slaying of Roger Umberger. One month prior to the fatal shooting, Drinnon's wife filed for divorce and lived with the decedent Umberger. Drinnon had unsuccessfully attempted reconciliations and had also threatened on several occasions to kill Umberger. A few days prior to the shooting, Drinnon warned his wife that her living arrangement could not continue and that if she continued to live with Umberger, he would kill one of them.
 
 
 3
 On the night of the slaying, October 8, 1974, Drinnon visited codefendant Minor. Drinnon gave Minor fourteen .22 caliber cartridges, told him to load Drinnon's automatic rifle, and said that he was going to kill Umberger. The men then drove around in Drinnon's car drinking beer. After proceeding to Umberger's home and finding no one there, they left and returned several hours later. This time they found Drinnon's wife and Umberger getting out of a truck. Drinnon attempted to talk to his estranged wife. When Umberger tried to enter the house, Drinnon fired a number of shots, one bullet striking Umberger in the head, fatally wounding him.
 
 
 4
 Drinnon and Minor then returned to Minor's home where Drinnon gave his rifle to Mr. McQueen, with whom Minor resided, and stated he had "shot the son-of-a-bitch." Drinnon returned to the scene of the shooting and later called a hospital to see if Umberger had been admitted, but apparently thought he had killed him. In his postarrest statement, however, Drinnon claimed that Minor had fired the shots and that he did not know that anyone had been shot.
 
 
 5
 Drinnon was convicted of second degree murder and was sentenced to life imprisonment. The Tennessee Court of Criminal Appeals affirmed Drinnon's conviction and sentence. The Tennessee Court of Criminal Appeals' opinion sets out that Drinnon challenged first the weight and sufficiency of the evidence, but the court overruled this assignment finding "all the elements of second degree murder are found in the evidence." Drinnon also made numerous other assignments of error in his direct appeal apparently unsupported by "any proposition of law or fact" and "not sustained by any citation of authority" contrary to court rules. The court nevertheless considered these unbriefed assignments," but found them meritless, including the claim of error in denying a request for continuance, the claim of unfairness in granting codefendant Minor's motion for severance, who was then permitted to testify against Drinnon in return for a guilty plea. The court of criminal appeals ruled that the jury was aware of these circumstances and "had ample opportunity to consider his [Minor's] credibility." The court also overruled Drinnon's unspecified contentions about the jury instructions as given and his claim that the death penalty statute was unconstitutional.[1]
 
 
 6
 On March 14, 1977, Drinnon filed pro se a petition for post conviction relief in state court. Apparently Drinnon raised ineffective assistance of counsel as a basis for relief, citing his ( attorney's inadequate trial preparation, alleging that the attorney had met with him only once before trial for a period of ten to fifteen minute.[2] The trial and criminal appellate courts dismissed the petition. In an unpublished decision, the Tennessee Court of Criminal Appeals specifically stated and held:
 
 
 7
 The first contention, relative to indequate representation of trial [sic], is based on the charge that counsel only talked to him one time prior to trial and this was only for a period --of about ten minutes in the jail. The trial judge in his finding of fact analyzed the defense mounted in the trial court and held that the assistance received by defendant was adequate and competent. Appellant has failed to show here what additional matter might have been introduced in his defense if his trial counsel had consulted with him personally to a greater degree than he claims. We have examined the record and are in accord with the findings of the trial judge.
 
 
 8
 The Tennessee Court of criminal Appeals also overruled Drinnon's contention that permitting his wife to testify against him was reversible error. The court held that no privilege attached under the circumstances. It also considered contentions that his appeal of right was ineffectual because assignments of error had not been properly prepared and filed, but the court noted that "the unbriefed assignments were considered and found to be without merit." The court finally found that appellant had a "fair trial and overruled all assignments."
 
 
 9
 Since the appellate court believed that it was unclear whether Drinnon had been advised of his right to petition the Tennessee Supreme Court for writ of certiorari with respect to his original conviction, that court vacated its "original judgment affirming the conviction" and reentered it to give Drinnon a belated opportunity to appeal his conviction in a timely fashion. Subsequently, Drinnon claims to have petitioned the Tennessee Supreme Court, seeking review of his original conviction and of the denial of his petition for post-conviction relief. On April 16, 1979, the Tennessee Supreme Court denied petitioner's petition for certiorari in a one sentence order indicating that it had considered the petition, briefs, "and the entire record."
 
 
 10
 It is unclear whether this Tennessee Supreme court order dealt with the delayed appeal from the original conviction or whether it denied certiorari with respect to the opinion of the Court of Criminal Appeals denying on its merits the assignments of error with respect to the post-conviction appeal relating to ineffective assistance of counsel.
 
 
 11
 On May 21, 1981, Drinnon filed a petition for writ of habeas corpus in the united States District Court for the Middle District of Tennessee. Drinnon raised the claim of ineffective assistance of counsel in part because his attorney (Rhea) only met with him once before trial for less than fifteen minutes. Drinnon also alleged the following facts as evidencing Rhea's inadequate trial preparation:
 
 
 12
 (1) failure to file pre-trial motions;
 
 
 13
 (2) failure to discuss defense strategies with Drinnon;
 
 
 14
 (3) failure to seek "meaningful" plea bargain; and
 
 
 15
 (4) failure to investigate and to prepare the case adequately.
 
 
 16
 In his 1981 federal habeas corpus petition, Drinnon made the following assertion:
 
 
 17
 Nature of proceeding: Post Conviction Relief Petition, however, the petition was dismissed with the stipulation that petitioner could file a delayed appeal to State Supreme Ct.
 
 
 18
 Grounds raised: Ineffective assistance of counsel.
 
 
 19
 State Supreme Court denied certiorari (date unknown). Also, the Court of criminal Appeals affirmed the tri.al judge's dismissal of petitioner's post Conviction Relief petition. (July 13, 1978). Certiorari to the State Supreme Court was denied in 1979, on petitioner's post Conviction Relief Petition.
 
 
 20
 In its answer, the State sought dismissal of the petition on the basis of Drinnon's failure to exhaust claims (1) and (3) before any state court. After counsel was appointed for Drinnon by the district court, a memorandum was filed responding to the State's position. In regard to the exhaustion problem, it was contended that there were allegedly "no such available State remedies for any claims he might wish to raise in attacking his conviction and sentence at this time," citing Fay v. Noia, 372 U.S. 391 (1963); Carter v. Jago, 637 F.2d 449 (6th Cir.1980); and Keener v. Ridenour, 594 F.2d 581 (6th Cir.1979). It was conceded, however, that Drinnon "might attempt" a post-conviction petition, but the "court would be bound to conclude that any claims he might raise are either waived or previously determined." Drinnon's counsel, however, did amend the habeas corpus petition. The pertinent portions of the amended claim are hereinafter set forth:
 
 
 21
 9. If you did appeal, answer the following:
 
 
 22
 (a) Name of court: Tennessee court of Criminal Appeals
 
 
 23
 (b) Result: Affirmed
 
 
 24
 (c) Date of result: March 9, 1976
 
 
 25
 (d) Grounds raised: (1) insufficient evidence; (2) failure to grant a continuance; (3) state's failure to disclose that a co-defendant pleaded guilty and was sentenced before the verdict in this case was returned; (4) failure to instruct on defendant's theory of the case; and (5) unconstitutionality of the death penalty statute.
 
 
 26
 10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?
 
 Yes X No
 
 27
 11. If your answer to lO was "yes," give the following information:
 
 
 28
 (a)(1) Name of court: Criminal Court of Hamblen County
 
 
 29
 (2) Nature of proceeding: Post-Conviction Proceeding under Tenn. Code Ann. 5 40-3801, et seq.
 
 
 30
 (3) Grounds raised: (1) ineffective assistance of trial counsel; (2) ineffective assistance of appellate counsel; (3) reduction of sentence to statutory minimum; (4) deprivation of petitioner's right to petition the Tennessee Supreme Court for certiorari.
 
 
 31
 (4) Did you receive an evidentiary hearing on your petition, application or motion?
 
 Yes X No
 
 32
 (5) Result: relief granted
 
 
 33
 (6) Date of result: July 22, 1977
 
 
 34
 * * *
 
 
 35
 * * *
 
 
 36
 A. Ground one: ineffective Assistance of Trial Counsel
 
 
 37
 Supporting FACTS (tell your story briefly without citing cases or law): Petitioner alleges that his trial counsel failed to prepare adequately for the trial of his case, particularly by his failure to investigate any lines of defense. He failed to interview any State of [sic) defense witnesses before trial, except that he did briefly interview petitioner once. At trial, defense counsel failed to object to inadmissible and unfairly prejudicial testimony, particularly regarding petitioner's arrests on related misdemeanor charges.
 
 
 38
 B. Ground two: Ineffective Assistance of Appellate Counsel.
 
 
 39
 Supporting FACTS (tell your story briefly without citing cases or law): petitioner's counsel on direct appeal failed to perform within the range of competence demanded of attorneys in criminal cases, particularly by failure to raise meritorious issues and by his failure to brief adequately the issues that were raised.
 
 II. EXHAUSTION
 
 40
 We find that the record establishes that Drinnon has clearly exhausted his remedies as to certain claims and has been afforded an opportunity to present these claims to both the Tennessee Court I of criminal Appeals and the Tennessee Supreme Court. These clearly exhausted claims that are relevant to this appeal are:
 
 
 41
 (1) inadequate preparation for trial based on a charge that Drinnon's trial counsel consulted with him once before trial;
 
 
 42
 (2) ineffective assistance of appellate counsel; and
 
 
 43
 (3) deprivation of the right to petition the Tennessee Supreme Court for certiorari.
 
 
 44
 The first stated ground was fully and fairly presented for consideration on direct appeal and in post-conviction proceedings. The second ground was alluded to on the direct appeal in that assignments of error were not properly briefed, but the appellate court, nevertheless, considered them on the merits. Delayed appeal on the full record by petition for certiorari to the Tennessee Supreme Court was then made available to Drinnon. Thus, in effect, the Tennessee courts have had a full opportunity to consider this claim. With regard to claim (3), because the Tennessee Court of Criminal Appeals was concerned about this failure during the course of direct appeal, it specifically took action to preserve delayed appeal to the supreme court. It was fully before those courts for consideration and action.
 
 
 45
 Thus, it was appropriate for the district court to consider these three claims to determine whether a federal constitutional violation was involved with respect to each. As to claims (2) and (3), the Tennessee appellate courts did consider the assignments of error made, despite procedural deficiencies. Delayed appeal to the supreme court was permitted. The state courts either denied these claims or rendered them moot. We are only left, then, with the , troubling question: was it sufficient to exhaust a claim of ineffective assistance of trial counsel to present evidence to the state courts based solely upon trial counsel's failure to meet and consult with Drinnon except one time? Nowhere does it appear that Drinnoll or any of his counsel presented to the Tennessee courts evidence with respect to ineffective assistance concerning his trial attorney's alleged failure (a) to file pretrial motions, (b) to seek a "meaningful" plea bargain, (c) to investigate the case fully (or "any lines of defense"), (d) to interview State or defense witnesses, and (e) to object at trial to evidence regarding Drinnon's prior arrests.
 
 
 46
 All of these latter matters and evidence supporting these new assertions about specific additional instances of ineffective assistance of trial counsel were presented to the district court despite the State's objection that there had been no adequate exhaustion with regard to these claims. The question is whether a general claim of ineffective assistance of counsel, supported by one specific episode of attorney ineffectiveness, presented to the state courts is a sufficient exhaustion of that issue to support a subsequent claim in federal court, supported by five or six additional specific allegations of negligence, oversight, or fault on the part of trial counsel.
 
 
 47
 The exhaustion provision of 28 U.S.C. Sec. 2254 requires a habeas petitioner to present fairly to the state court the same claim urged upon the federal court. Anderson v. Harless, 459 U.S. 4, 6 (1982); Picard v. Connor, 404 U.S. 270, 275-76 (1971); Samson v. Love, 782 F.2d 53, 55 (6th Cir.1986). To be deemed a "fair opportunity," the ( petitioner must have given the state a chance "to apply controlling legal principles to the facts bearing upon his constitutional claim." Harless, 459 U.S. at 6 (emphasis added). "It is not enough that all the facts necessary to support the federal claim were before the state court, ... or that a somewhat similar state-law claim was made . " Id. (citation omitted). The purpose of the exhaustion requirement is "to protect the state court's role in the enforcement of federal law and prevent disruption of state judicial proceedings." Rose v. Lundy, 455 U.S. 509, 518 (1982). To ensure that this goal is satisfied, a federal habeas petition containing exhausted and unexhausted claims must be dismissed to ensure that the state courts have the initial opportunity to rule on and correct alleged federal constitutional violations. See Rose v. Lundy, 455 U.S. 509; Bowen v. State of Tennessee, 698 F.2d 241 (6th Cir.1983) (en banc). In this case, the State objected repeatedly to Drinnon's federal habeas petition citing failure to exhaust state remedies. In Sampson v. Love, this court discussed "the question whether, or when, new facts or evidence, not presented to the state courts, can affect a habeas petitioner's claim to such a degree that the new facts or evidence must first be presented to the state courts." 782 F.2d at 55. Sampson, however, did not involve a claim of ineffective assistance of counsel but centered upon alleged jury vindictiveness in sentencing on retrial. The Supreme Court has also recently considered a related question in Vasquez v. Hillery, 106 S.Ct. 617 (1986). That case involved a habeas corpus claim based upon a charge of unconstitutional exclusion of blacks from a grand jury. The state had charged that petitioner, Vasquez, had "circumvented his obligation to exhaust state court remedies before seeking collateral relief in federal court." Id. at 620. This contention arose because the federal judge had permitted petitioner to " 'supplement or clarify' the state court record presented for review," with respect to submission of additional statistical data. Id.
 
 
 48
 The critical point in such a circumstance was determined in Vasquez to be whether "the prisoner has presented the substance of his claim to the state courts."[3] In that case the petitioner alleged and showed in state court that no black had ever served on the grand jury in the county of conviction and that there were qualified blacks available to serve. The additional evidence considered in federal court on habeas corpus related to a statistical analysis and mathematical computation as to whether chance or accident could have caused the absence of blacks on the grand jury at the pertinent time. The court requested this clarifying data sua sponte. Since the reasoning expressed in Sampson v. Love, supra, and in Vasquez v. Hillery, supra, was not available at the time this matter was presented to the district court, and because it is critical to determine whether the substance of the total ineffective assistance of trial counsel claim was first fairly presented to the Tennessee courts for their consideration, and therefore exhausted, we are persuaded that we must remand this case for a determination of the exhaustion question by the district court. See Rose v. Lundy, supra; Bowen v. State of Tennessee, supra; and Brand v. Lewis, 784 F.2d 1515, 1517 (11th Cir.1986).
 
 
 49
 Accordingly, we REMAND this case to the district court for its determination as to whether the ineffective assistance of trial counsel claim has been fully exhausted.
 
 III. REMEDY
 
 50
 Since we have ordered a remand to consider the exhaustion question which we feel the district court should address initially, we now direct our attention to the action of the district court in adjusting or reducing a state court sentence. The longstanding rule in Tennessee at the time Drinnon was sentenced was that the jury set and established the term of the sentence. See Tenn.Code Ann. Secs. 40-35-112(a) (1982 & 1985 Supp.) and 40-20-107 (1982) (and cases cited therein); see also 8 Tenn. Jur. 5 45 at 439. The district court was concerned primarily with what it perceived as an inadequate articulation of reasons to mitigate and a failure to "develop a strategy to mitigate the sentence." He refers to this failure with respect to the "sentencing stage of the petitioner's trial." Because of these noted deficiencies in respect to urging mitigation, the district court apparently felt that this failure adequately to represent the defendant also had an effect "throughout the trial," but the emphasis of the district court's memorandum decision is upon prejudice suffered by defendant at the "sentencing phase."
 
 
 51
 In any event, the district judge concluded that "the appropriate remedy" was for the state to "reduce the penalty for defendant's second degree murder conviction to the minimum provided by law" rather than the penalty assessed by the jury. He suggested that the state "might alternatively [to] grant defendant a new sentencing hearing." The district judge does not explain the basis of his authority to reduce the jury imposed sentence in this case, nor does he explain how a new sentencing hearing is to be conducted in light of the 1974 trial and conviction. Is the new sentencing hearing, if that is a viable alternative, to be heard, if possible, before the same jury that heard the evidence (if possible), a newly empaneled jury, or before a judge? We suggest that the district court consider these problems with respect to a proper disposition of the habeas corpus petition if he first concludes that Drinnon has fully exhausted the claim or claims presented in his amended petition. It may be that instead of these suggestions, a new trial may be the appropriate remedy.
 
 
 52
 The case is REMANDED for further consideration and disposition in light of the concerns expressed in this opinion.
 
 
 53
 JONES, concurring.
 
 
 54
 I agree that this case should be remanded, However, my only basis for this remand is that the district court may have misperceived the sentencing procedures under Tennessee law.
 
 
 
 *
 The Honorable Horace W. Gilmore, U.S. District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The court held in any event that Drinnon had not been convicted of a capital offense; thus the statute was inapplicable to Drinnon
 
 
 [2]
 Drinnon also based the ineffective assistance claim upon his attorney's failure to object to "inadmissible testimony." This latter claim is not involved in this appeal
 
 
 [3]
 The Court cited for this proposition, Picard v. Conner, 404 U.S. 270, 278 (1971). In Picard, petitioner's const tutional claim was held not to have been first presented to the state court and thus exhaustion had not occurred