**James Amar DAVIS, Petitioner,**

v.

**Charles SCULLY, Superintendent of Green Haven Correctional Facility, and Robert Abrams, The Attorney General of the State of New York, Respondents (Two Cases).**

**Nos. 84 Civ. 5973(EW), 84 Civ. 6011(EW).**

United States District Court, S.D. New York.

Aug. 13, 1987.

James Amar Davis, pro se.

Mario Merola, Dist. Atty., Bronx County, New York City, for respondents; Kevin Lubin, Asst. Dist. Atty., of counsel.

EDWARD WEINFELD, District Judge.

The petitioner, appearing pro se, has presented two applications for federal habeas corpus relief which center about two separate convictions in the New York State Supreme Court. Petitioner was convicted in September 1979 in the Supreme Court of the State of New York, Bronx County, after a jury trial of robbery in the second degree, and is now serving an indeterminate term of imprisonment of from seven and one-half to fifteen years.

The judgment of conviction was affirmed by the Appellate Division, First Department, without opinion, and leave to appeal to the Court of Appeals denied. Thereafter petitioner filed the instant application alleging four grounds of violation of his federal constitutional rights, which he asserts void his conviction, to wit:

(1) The police lacked probable cause to effectuate his arrest;

(2) The show-up identification procedure was impermissibly suggestive and there was an insufficient independent source for the in-court identification;

(3) The Trial Court impermissibly instructed the jury on the manner it should review the evidence; and

(4) The Trial Court impermissibly admitted into evidence a tape recording conversation in which petitioner offered to bribe the complaining witness.

The respondent urged dismissal upon the ground that petitioner has presented exhausted and unexhausted claims. *Rose v. Lundy.*[1] The foregoing application is referred to as ("the 1979 conviction").

Following the 1979 conviction, petitioner was convicted in February 1980 after a jury trial of murder in the second degree, robbery in the first degree and two counts of possession of a weapon in the second degree ("the 1980 conviction"). He was sentenced to four concurrent terms of imprisonment, including a sentence of twenty-five years to life for the felony murder charge. The judgment of conviction was affirmed by the Appellate Division, First Department, without opinion, and leave to appeal to the Court of Appeals denied. Petitioner then instituted a habeas corpus proceeding pursuant to 28 U.S.C. § 2254 seeking to void the judgment of conviction for alleged violation of his federal constitutional rights, to wit:

(1) The Court improperly applied the doctrine of collateral estoppel with respect to the denial of defendant's motion to suppress evidence, which ruling was made in the 1979 trial;

(2) The admission into evidence, including a gun (one of the murder weapons), supplied by petitioner's father and stepmother, allegedly obtained as a result of an illegal arrest;

(3) Impermissible in-court identification of petitioner.

The 1979 conviction was based upon the robbery of George Perez, a gas station attendant, during the early hours of January 8, 1979. The 1980 conviction was based upon the felony murder of one Martin Campbell about five days before the Perez robbery. Both the 1979 and 1980 petitions were referred to Magistrate Dolinger pursuant to 28 U.S.C. § 636(b)(1)(B) to submit proposed findings of fact and recommendations for disposition. The Magistrate found that petitioner had failed properly to present and exhaust available state remedies with respect to his claim that the Trial Judge in the 1979 trial had impermissibly instructed the jury on the manner it should review the evidence. Accordingly, he recommended that the 1979 petition be dismissed without prejudice to refiling upon either exhaustion of that claim, or its withdrawal.[2] Petitioner thereafter filed notice of withdrawal of the unexhausted claim. Accordingly, this permitted consideration of his exhausted claims under the 1979 petition. As to the 1980 petition, the Magistrate found they had been properly exhausted and also were ripe for consideration.

As to the claims under both petitions, the Magistrate recommended denial of all upon the merits, except that, with respect to the 1979 conviction, he held that the introduction into evidence of a tape recorded pretrial conversation petitioner initiated with George Perez, the holdup victim, in which petitioner offered Perez a bribe to alter his testimony as to events was not harmless error. Petitioner filed objections to the recommendation of dismissal of all other charges upon the merits. The State objected to the recommendation that the admission of the tape recording was not harmless error.

The Court has made a detailed study of the entire voluminous record in order to make a de novo determination under 28 U.S.C. § 636(b)(1)(C) of those portions of the Magistrate's report or specified findings or recommendations as to which objec-

---

**1.** 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).

**2.** *Rose v. Lundy,* 455 U.S. 509, 520, 102 S.Ct. 1198, 1204, 71 L.Ed.2d 379 (1982).

tions were made by the parties, as noted above.

With respect to factual matters, the Court adopts the statement of the Magistrate's report contained at pages 4 through 12, ending with "to the time of trial." After Perez had testified to petitioner's attempt to have him change his version of events upon the robbery trial, the tape recordings were admitted into evidence.

Following petitioner's conviction upon the robbery charge, he was put on trial on the murder second degree charges. On January 3, 1979, less than a week before the Perez holdup, the body of a Martin Campbell was discovered in the Bronx, not far from the site of the Perez holdup. When petitioner was arrested a week later on the holdup charge, it appeared that the red Cutlass car, which was "gassed up" by Perez when he was held up, was registered in the name of Martin Campbell, and that the shotgun shells that were removed from Campbell's body matched those fired from a shotgun found on the floor of the Cutlass. Other evidence was introduced linking petitioner with the murder. In this instance, an omnibus pretrial hearing was conducted by the Judge who was to preside at the murder trial, raising various issues of evidentiary import. The witnesses who testified gave substantially the same testimony with respect to pretrial motions that was given at the prior hearing and trial. Additional testimony was offered as to items that had been removed at petitioner's request and with his consent from apartment by his father, Merit Davis, and stepmother, Veronica Jackson. Petitioner's stepmother, who at the time was incarcerated, signed a consent for the police to remove certain property from her home, which included the belongings that she and petitioner's father had removed from petitioner's apartment, including a shirt, later identified as belonging to Martin Campbell, the murder victim in the charge against petitioner. Davis, petitioner's father, also testified that he had hidden in his apartment a gun and holster that had been in petitioner's possession; the gun was later identified as one of the murder weapons.

The Justice presiding in the murder trial held that the doctrine of collateral estoppel bound him to apply the ruling of the Justice in the Perez trial that the police had probable cause to arrest petitioner. However, he independently made his own findings that there was probable cause. He also denied petitioner's motion to suppress the items obtained from the step-mother's apartment, holding that they had been removed from petitioner's apartment with his consent, and that in any case she had voluntarily turned them over to the police. Further, the Court denied the motion to suppress the pistol, holding that petitioner's father had voluntarily given it to the police. However, the Trial Judge suppressed the statements made by petitioner at the time of his arrest and a green sweat shirt he was then wearing. He made a further finding that Perez "did have an independent basis other than the show up that was not tainted by the show up in any manner." In February 1980, the jury found petitioner guilty of second degree murder, one count of robbery in the first degree, and two counts of criminal possession of a weapon. Petitioner was sentenced to four concurrent sentences of twenty-five years to life for the felony murder charge.

The Magistrate decided that if petitioner withdrew his unexhausted 1979 claim (which as noted he has) and the Court denies the 1980 petition on the merits, wherein petitioner received a longer sentence than under the 1979 conviction, he must nonetheless reach the merits of the 1979 petition under the concurrent sentence doctrine.[3] The Magistrate justified collateral review on the ground that the State failed to show that the risks of consequences to petitioner were too slight to justify review.[4] Accordingly, the Magis-

---

**3.** *See United States v. Romano,* 382 U.S. 136, 138, 86 S.Ct. 279, 280–81, 15 L.Ed.2d 210 (1965); *Benton v. Maryland,* 395 U.S. 784, 787–93, 89 S.Ct. 2056, 2058–62, 23 L.Ed.2d 707 (1969); *Si-*

*bron v. New York,* 392 U.S. 40, 50–58, 88 S.Ct. 1889, 1896–1900, 20 L.Ed.2d 917 (1968).

**4.** *United States v. Ruffin,* 575 F.2d 346, 371 (2d Cir.1978). ([T]o invoke the doctrine, the

trate recommended that the concurrent sentence doctrine not be invoked to bar review of the 1979 petition and considered it on the merits.[5]

The Magistrate held that the introduction upon the 1979 robbery trial of the taped recorded conversation that petitioner had initiated with the State's principal witness, George Perez, violated petitioner's right to counsel under *Massiah v. United States* and its progeny,[6] and concluded that it was not harmless error. The Magistrate recommended that if the Court accepts his recommendation that the 1980 petition be dismissed on the merits, he further recommended that the Court consider the concurrent sentence doctrine, which is a rule of judicial convenience, not a jurisdictional bar [7] and may be applied by a habeas corpus court.[8]

The Magistrate was of the view that the 1979 conviction could have a possible effect on petitioner's application for parole on his 1980 sentence if the 1979 conviction was unreviewed. Thus we return the Magistrate's recommendation that the 1979 conviction was tainted by the admission into evidence of the tape recording, and that it was not harmless error.

Preliminarily, this Court questions that the factual situation in this case comes under *Massiah* and other cases relied upon by the Magistrate in holding that it was error to admit the tape recordings. But assuming the correctness of the Magistrate's view, this Court disagrees that it was not harmless error. Indeed, this Court's close study of the voluminous record leads it to conclude that if error there was, it was harmless error beyond a reasonable doubt under *California v.*

*Chapman.*[9] The evidence of defendant's guilt was overwhelming. When the car drove up to the gas station, there were two occupants in the car, both black. The driver, who was wearing a green jacket with a hood, and over this a green army jacket, requested that the tank be filled. Perez, the gas attendant, observed the petitioner, who made the request. Then followed what in effect was an "eyeball to eyeball" opportunity for Perez again to observe the driver. After the tank had been filled with gas, he went to the driver's side to receive payment. The driver then grabbed Perez and demanded his money, while the passenger produced a knife and thrust it toward Perez's chest. Perez then turned over his money and the two perpetrators fled in the car. Petitioner and his confederate were driving a car identified by the victim as a red Oldsmobile Cutlass, license plate number 31101W, with a black top, and Perez so described the car to the police and stated the direction in which the assailants had driven two minutes earlier, which information was broadcast over various patrol car radios.

Within four minutes after the assailants' description had been broadcast, Boyle, a police officer parked in his car, observed a red and black Cutlass with license plate 311001W drive past his car in the opposite direction at approximately twenty-five to thirty miles per hour. Boyle made a U-turn to follow the Cutlass; it then speeded up to approximately sixty miles per hour, with Boyle in pursuit. About a minute later, the Cutlass ran through a red light and hit another car, and Boyle observed two males—one, apparently the driver wearing clothes described by Perez—jump out of the car and run away. Boyle trans-

Government should have the burden of persuading ... the Court that the risk of collateral consequences is too slight to justify review.)

5. In the usual concurrent sentence doctrine, the issue arises when under a single indictment a defendant is convicted of separate counts.

6. 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964); *United States v. Henry,* 447 U.S. 264, 270–71, 100 S.Ct. 2183, 2186–87, 65 L.Ed.2d 115 (1980); *Maine v. Moulton,* 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1986).

7. *Berton v. Maryland,* 395 U.S. 784, 792, 89 S.Ct. 2056, 2061, 23 L.Ed.2d 707 (1969).

8. *See, e.g. United States ex rel. Weenis v. Follette,* 414 F.2d 417, 419 (2d Cir.1969), *cert. denied,* 397 U.S. 950, 90 S.Ct. 973, 25 L.Ed.2d 131 (1970); *United States v. Vargas,* 615 F.2d 952–53 (2d Cir.); *United States v. Toner,* 728 F.2d 115, 119, n. 5.

9. 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

mitted an alarm over the car radio, reporting that he had chased the identified vehicle and that the two male occupants were headed north on Herkimer Avenue on foot. Another police officer who responded observed from a distance of about ten feet a black man wearing a green hooded jacket, standing behind a parked vehicle. The police officer arrested the man, who was the petitioner. In response to the police officer's question where he had come from, he responded, "oh, down the block," but did not supply any address. The police officers proceeded to the gas station where the robbery had occurred. On the way petitioner was informed of his rights. Petitioner stated "give me a break, I just got out. I did five years."

They arrived at the scene of the holdup no more than fifteen minutes after its occurrence. Perez came out of the gas station office, and from a distance of about three feet immediately pointed to petitioner and said "that's the guy." Upon the trial it was stipulated that petitioner was not the registered owner of the Cutless and that the registered owner was a Martin Campbell.

The Court finds that in the light of the evidentiary facts based on the holdup, the opportunity for identification of petitioner at the time of the holdup and following his arrest, the description of petitioner fleeing in the Cutlass which sped up to sixty miles an hour when a police car followed it, and all the other surrounding circumstances, make it clear that the admission of the tape recording was harmless error beyond a reasonable doubt. Moreover, in view of the totality of petitioner's entire predicate record, it can fairly be concluded that the 1979 conviction would be of minimal, if any, adverse consequence before a Parole Board that may hereafter consider any application by petitioner for parole release under his 1980 murder conviction. The underlying facts of that conviction are such that the possibility of collateral consequences of the 1979 robbery charge before the Board is so remote that the harmless error rule may also properly be applied.[10] Upon the totali-

ty of the evidence, this Court is persuaded beyond a reasonable doubt that the alleged error is harmless.

Accordingly, the 1979 petition is dismissed, as is the 1980 petition, upon the merits.

So ordered.

---

10. *Cf. Benton v. Maryland,* 395 U.S. 784, 791, 89 S.Ct. 2056, 2060–61, 23 L.Ed.2d 707 (1969).