Robert WALKER (99–A–0990), Petitioner,

v.

Roy A. GIRDICH, Superintendent of Franklin Correctional Facility, Respondent.

Nos. 01–CV–1992 (JBW), 03–MISC–0066 (JBW).

United States District Court, E.D. New York.

July 14, 2003.

Thomas M. Ross, The Office of the District Attorney, Kings County, Brooklyn, NY, for Respondent.

## MEMORANDUM, JUDGMENT & ORDER

WEINSTEIN, Senior District Judge.

The petition for a writ of habeas corpus is denied. No hearing on this matter is necessary. This memorandum briefly addresses petitioner's claims.

### I. Facts and Procedural History

Petitioner was tried on charges relating to the sale of cocaine and heroin to an undercover police officer. He was convicted by a jury of one count of third degree criminal sale of a controlled substance and three counts of third degree criminal possession of a controlled substance. He was sentenced as a second felony offender to 6 to 12 years in prison.

The Appellate Division affirmed his convictions and sentence on direct appeal. Leave to appeal to the New York Court of Appeals was denied. No state collateral proceedings were initiated.

In the instant application for a writ of habeas corpus, petitioner claims (1) that the trial court erred by not finding that petitioner had made out a prima facie case of discrimination during jury selection when the prosecutor openly admitted a racial basis for a peremptory challenge; and (2) that the closure of the courtroom during the testimony of an undercover officer violated his right to a public trial.

### II. AEDPA

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

An "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." *Sellan v. Kuhlman,* 261 F.3d 303, 313 (2d Cir.2001) (quoting *Aycox v. Lytle,* 196 F.3d 1174, 1178 (10th Cir.1999)). Under the "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (O'Connor, J., concurring and writing for the majority in this part). Under the "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413, 120 S.Ct. 1495. "[F]ederal law, as determined by the Supreme Court, may as much be a generalized standard that must be followed, as a bright-line rule designed to effectuate such a standard in a particular context." *Overton v. Newton,* 295 F.3d 270, 278 (2d Cir.2002). Determination of factual issues made by a state court "shall be presumed to be correct," and the applicant "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### III. Exhaustion

In the past, a state prisoner's federal habeas petition had to be dismissed if the

prisoner did not exhaust available state remedies as to any of his federal claims. *See Rose v. Lundy,* 455 U.S. 509, 522, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). "This exhaustion requirement is ... grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." *Coleman v. Thompson,* 501 U.S. 722, 731, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The exhaustion requirement requires the petitioner to have presented to the state court "both the factual and legal premises of the claim he asserts in federal court." *Daye v. Attorney General,* 696 F.2d 186, 191 (2d Cir.1982) (en banc).

■ Pursuant to AEDPA, a district court may now, in its discretion, *deny* on the merits habeas petitions containing unexhausted claims—so-called "mixed petitions." *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state."). In addition, the state may waive the exhaustion requirement, but a "State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement." *Id.* § 2254(b)(3); *see also Ramos v. Keane,* No. 98 CIV. 1604, 2000 WL 12142, at *2, 2000 U.S. Dist. LEXIS 101, at *10 (S.D.N.Y.2000) (state's failure to raise exhaustion requirement does not waive the issue).

## IV. Procedural Bar

■ A federal habeas court may not review a state prisoner's federal claims if those claims were defaulted in state court pursuant to an independent and adequate state procedural rule, "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged

violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546.

■ If a state court holding contains a plain statement that a claim is procedurally barred then the federal habeas court may not review it, even if the state court also rejected the claim on the merits in the alternative. *See Harris v. Reed,* 489 U.S. 255, 264 n. 10, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) ("a state court need not fear reaching the merits of a federal claim in an *alternative* holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision).

■ When a state court "uses language such as 'the defendant's remaining contentions are either unpreserved for appellate review or without merit,' the validity of the claim is preserved and is subject to federal review." *Fama v. Comm'r of Corr. Svcs.,* 235 F.3d 804, 810 (2d Cir. 2000). When a state court "says that a claim is 'not preserved for appellate review' and then ruled 'in any event' on the merits, such a claim is not preserved." *Glenn v. Bartlett,* 98 F.3d 721, 724–25 (2d Cir.1996).

## V. *Batson* Challenges

"More than a century ago, the [Supreme] Court decided that the State denies a black defendant equal protection of the laws when it puts him on trial before a jury from which members of his race have been purposefully excluded." *Batson v. Kentucky,* 476 U.S. 79, 85, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (citing *Strauder v. West Virginia,* 100 U.S. 303, 25 L.Ed. 664 (1880)). In *Batson,* the Court resolved certain evidentiary problems faced by defendants trying to establish racial discrimination in peremptory strikes. It established a three-step bur-

den-shifting framework for the evidentiary inquiry into whether a peremptory challenge is race-based. First, the party challenging the other party's attempted peremptory strike must make a prima facie case that the nonmoving party's peremptory is based on race. *Batson*, 476 U.S. at 96–97, 106 S.Ct. 1712. Second, the nonmoving party must assert a race–neutral reason for the peremptory challenge. *Id.* at 97–98, 106 S.Ct. 1712. The nonmoving party's burden at step two is very low. Under *Purkett v. Elem*, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (per curiam), although a race-neutral reason must be given, it need not be persuasive or even plausible. *Id.* at 768, 115 S.Ct. 1769. Finally, the court must determine whether the moving party carried the burden of showing by a preponderance of the evidence that the peremptory challenge at issue was based on race. *Batson*, 476 U.S. at 96, 98, 106 S.Ct. 1712.

■ Throughout the three *Batson* steps, the burden remains with the moving party. "It is not until the third step that the persuasiveness of the justification becomes relevant—the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination." *Purkett*, 514 U.S. at 768, 115 S.Ct. 1769. Typically, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. Because the evidence on this issue is often vague or ambiguous, the best evidence often will be the demeanor of the attorney who exercises the challenge. Evaluation of the attorney's credibility lies "peculiarly within a trial judge's province." *Wainwright v. Witt*, 469 U.S. 412, 428, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985).

## VI. Right to Public Trial

■ The Sixth and Fourteenth Amendments guarantee an accused criminal a right to a public trial. "The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions.... In addition to ensuring that judge and prosecutor carry out their duties responsibly, a public trial encourages witnesses to come forward and discourages perjury." *Waller v. Georgia*, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (quotation and footnotes omitted). The right to a public trial is not absolute, however, and it may be limited under appropriate circumstances. Before allowing a courtroom to be closed, the trial court must, *inter alia*, find that an "overriding interest" that is likely to be prejudiced in the absence of closure. *Waller*, 467 U.S. at 48, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984). But where the courtroom is to be only partially closed a movant need only demonstrate a "substantial reason" to justify the closure. *Woods v. Kuhlmann*, 977 F.2d 74, 76 (2d Cir.1992) ("a less stringent standard [is] justified because a partial closure does not implicate the same secrecy and fairness concerns that a total closure does").

## VII. Certificate of Appealability

This opinion complies with *Miranda v. Bennett*, 322 F.3d 171, 175–77 (2d Cir. 2003), and Rule 52 of the Federal Rules of Civil Procedure. No other issue open to consideration by this court has merit. *See Sumner v. Mata*, 449 U.S. 539, 548, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981) ("a court need not elaborate or give reasons for rejecting claims which it regards as frivolous or totally without merit").

A certificate of appealability may be granted with respect to any one of petitioner's claims only if petitioner can make

a substantial showing of the denial of a constitutional right. Petitioner has a right to seek a certificate of appealability from the Court of Appeals for the Second Circuit. *See* 28 U.S.C. § 2253; *Miller–El v. Cockrell,* 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

## VIII. Analysis of Claims

Both of petitioner's claims were exhausted in the state courts and neither was procedurally defaulted. They may therefore both be reviewed by this court under the standards set forth by AEDPA.

▪ Petitioner claims that the trial court erred by not finding that petitioner had made out a prima facie case of discrimination during jury selection when the prosecutor openly admitted a racial basis for a peremptory challenge. During *voir dire,* petitioner made a *Batson* challenge after the prosecutor used her thirteenth peremptory challenge to exclude an African–American from the petit jury. Of the prosecutor's thirteen peremptory challenges, twelve were made against African Americans. Once the challenge was made, the trial court noted that five of the nine venire-persons that had to that point been chosen for the jury were African–American and that the court therefore felt that petitioner had failed to demonstrate a pattern of discrimination. *See* Trial Tr. at 338.

Before ruling on whether petitioner had made out a prima facie case of discrimination, the prosecutor stated her "race neutral" reason for exercising her challenge to this juror:

> Judge, my problem is with Mr. Jones was several things. One of the things, and one of the things Batson allows you to do in choosing of the jurors, is to allow [you to] get to other jurors. One of the main things was our desire to get to certain jurors that were towards the end of the back which Batson allows us

to do. But the main thing about Mr. Jones is that he had a problem with every single question that was asked. He gave one word answers and in fact at one point I believe it was either Ms.—

> . . . .

> *Okay, one of the main things I had a problem with was that this is an individual who was a Black man with no kids and no family.* He said he was not married. He had no family and in fact he had absolutely no experience whatsoever with police officers. He also stated after one of the questions was raised about whether or not—I believe it was if we proved our case, he goes, yeah, well only if it is convincing. That is what he had stated. I also noted, and you could look at my notes which were written at any time after we withdrew this juror, was I felt he had an attitude and I wrote that during the course of [defense counsel] talking to him. An attitude against a prosecutor is certainly a basis to remove that person.

> If you notice, he was the only juror that barely answered when she asked questions. I remember he would only nod his head and move it and at certain points he would not look up and he could say no or yes and that was the basis for removing him.

> . . . .

> Judge, I am sorry. He also came up and said he didn't want to miss work as a building maintenance person and in fact defense counsel was concerned of that. She brought that up at the end.

Trial Tr. at 340–42 (emphasis added).

After listening to the above explanation, the trial court stated:

> I don't find that there is a pattern and I don't find that. I have been watching it carefully and I don't get the sense and I have been listening to the questions and I have been listening to the answers and

based upon that I got the sense, I have a sense of why they challenged some people; and I don't believe it is on a racial basis. So your application is denied. I don't think there is a prima facie showing.

Trial Tr. at 343.

The trial court's determination that petitioner failed to make out a prima facie case of discrimination under these circumstances is rather puzzling. Even though a number of African–American jurors had been selected for the jury, the exercise of twelve of thirteen peremptory challenges against members of the same race in a panel of mixed jurors would seem inevitably to raise an inference of discrimination under step one of the *Batson* protocol—depending, of course, on the proportion of African–Americans who were in the panel.

Whether or not the trial court erred in finding that petitioner failed to make out a prima facie case is, however, academic, since the parties and the court in substance proceeded to the next steps of the *Batson* protocol—the offering of a race-neutral reason for the challenge and the adjudication of whether the proffered reason was pretextual. *See Hernandez v. New York,* 500 U.S. 352, 357, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) ("Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot."). Taken out of context, the prosecutor's stated reason for exercising the challenge—that "one of the main things I had a problem with was that this is an individual who was a Black man with no kids and no family"—rings of improper discriminatory intent and sounds like a blatant violation of *Batson.* Even when placed in the context of the remainder of the prosecutor's explanation for the chal-

lenge, a reasonable jurist could conclude that this juror was challenged for discriminatory reasons.

Trial judges are understandably hesitant to find that a prosecutor has engaged in a racially discriminatory act—whether "knowingly" or not. A trial judge nonetheless has an obligation to protect a defendant's right to a fair trial and to maintain society's faith in the fairness and integrity of our judicial system. Doing so sometimes requires a trial judge to make *Batson* rulings that at least implicitly brand a prosecutor with having harbored discriminatory intent. On occasion the accusation is justified; often it is not. In light of the fundamental principles of fairness that *Batson* challenges implicate, trial judges must be willing to set aside concern for the reputation of the prosecutor.

These observations aside, a reasonable jurist could conclude from the entirety of the prosecutor's statements during *voir dire* that, taken as a whole, her reasons for excluding the prospective juror were race-neutral and that her invocation of the prospective juror's race was nothing more than incidental and descriptive. Defense counsel's failure to contemporaneously challenge the prosecutor's statement—even as defense counsel was arguing to the judge that the prosecutor's race-neutral reasons were pretextual—suggests that defense counsel herself did not believe the prosecutor to really be saying something along the lines of "I challenged him because he is African–American." The prosecutor offered several race-neutral reasons for seeking to exclude the juror, including his monosyllabic answers and the prosecutor's desire to seat later venire-members. The prosecutor also stated that she felt the potential juror had an "attitude"—although this facially race-neutral reason might arguably have evidenced a discrimi-

natory predisposition on the part of the prosecutor.

The trial judge, who was in the best position to determine the credibility of the prosecutor's statements, concluded that her race-neutral reasons for excluding the prospective juror were credible and were not pretexts for illicit discrimination. The trial judge's factual determination, which this court must presume to be correct, is reasonable. Whether or not a federal judge might have found a *Batson* violation if sitting in the state trial judge's chair during the *voir dire* proceedings is not relevant. Petitioner has not demonstrated that the state courts' *Batson* rulings were contrary to or an unreasonable determination of federal law as determined by the Supreme Court of the United States. Habeas relief is not warranted.

■■ Petitioner also claims that the closure of the courtroom during the testimony of an undercover officer violated his right to a public trial. In particular, he complains that he was precluded from effectively cross-examining the undercover officer during a *Hinton* hearing concerning the geographical scope of his ongoing operations. Because there were no facts in the record demonstrating that the officer's ongoing work encompassed the location of the sale in the instant case, petitioner urges, the undercover officer may have had no reason to fear testifying in open court.

The Appellate Division rejected this claim, stating:

The trial court properly directed the closure of the courtroom during the testimony of the undercover police officer based on the testimony elicited from the officer at the *Hinton* hearing (*see, People v. Hinton*, 31 N.Y.2d 71[, 334 N.Y.S.2d 885, 286 N.E.2d 265], *cert denied* 410 U.S. 911[, 93 S.Ct. 970, 35 L.Ed.2d 273 (1973)]). Contrary to the defendant's claim, the officer's testimony

that he continued to operate within the 77th Precinct, a three to four square-mile area which included the address where the "buy-and-bust" transaction occurred, and that over 90% of his cases where in that precinct, provided a sufficiently specific geographical scope of on-going operations to justify the closure (*see, People v. Ayala*, 232 A.D.2d 312[, 649 N.Y.S.2d 131 (1996)], *aff'd* 90 N.Y.2d 490[, 662 N.Y.S.2d 739, 685 N.E.2d 492 (1997)]).

*People v. Walker*, 276 A.D.2d 651, 714 N.Y.S.2d 515, 516 (2000). The Appellate Division's conclusion is reasonable and is supported by the record. Protection of the officer's safety was a substantial reason justifying the partial closure of the courtroom. This decision was not contrary to or an unreasonable application of Supreme Court precedent. Habeas relief on this claim is not warranted.

IX. Conclusion

The petition for a writ of habeas corpus is denied.

A certificate of appealability is granted with respect to petitioner's *Batson* claim.

No certificate of appealability is granted with respect to any of petitioner's remaining claims, petitioner having made no substantial showing of the denial of a constitutional right. Petitioner has a right to seek a further certificate of appealability from the Court of Appeals for the Second Circuit. *See* 28 U.S.C. § 2253; *Miller–El v. Cockrell*, 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

SO ORDERED.